(No. 37315.
F. R. INSKIP *et al.,* Appellants, *vs.* THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, Appellee.

*Opinion filed Nov. 30, 1962.—Rehearing denied Jan. 28, 1963.*

RENO & O'BYRNE, of Champaign, (DONALD M. RENO and VANCE I. KEPLEY, of counsel,) for appellants.

JAMES J. COSTELLO, JOHN J. TEMPLIN, and WARREN GLOCKNER, all of Urbana, and RALPH F. LESEMANN, of East St. Louis, (JOHN S. RENDLEMAN, of Carbondale, and DUNN AND DUNN, of Bloomington, of counsel,) for appellee.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

This cause comes on direct appeal to this court from a judgment of the circuit court of Champaign County interpreting the Illinois Purchasing Act (Ill. Rev. Stat. 1959, chap. 127, pars. 132.1 *et seq.*) approved July 11, 1957, (Laws of 1957, p. 2890), entitled "An Act in relation to state purchasing and contracts." Plaintiffs who are residents and taxpayers of Champaign County, conducting plumbing and heating businesses in Champaign County, belong to and con-

stitute an unincorporated association known as the Plumbing and Heating Contractors of Champaign County. They filed a petition for declaratory judgment against The Board of Trustees of the University of Illinois alleging that the defendant board in the past and since the passage of the Illinois Purchasing Act makes purchases and expends funds for labor and repair, maintenance, remodeling, renovation and construction exceeding $1,500 on and about its property without awarding the same to the lowest responsible bidder on competitive bids, all in violation of the Illinois Purchasing Act. The petition refers specifically to the purchase of air conditioners to provide a refrigerated air conditioning system for the chemistry building on the University of Illinois campus at Urbana and the installation of said air conditioners by using defendant's employees, without first requesting and advertising for bids and without letting the same to the lowest responsible bidder, allegedly in violation of the Illinois Purchasing Act. Defendant filed an answer admitting that "this defendant, when it considered it to be advantageous and economical to do so, has expended state funds appropriated to it by the General Assembly for labor, for repairs, maintenance, remodeling, renovation and construction work exceeding $1,500 in cost performed by this defendant's own employees on and about its property instead of awarding such work to the lowest responsible bidder upon the basis of competitive bids taken by it therefor; but it denies that this was done in violation of any of the provisions of said Illinois Purchasing Act."

The pleadings are lengthy and the record voluminous but there is no serious dispute as to the facts, the plaintiffs essentially contending that the defendant board of trustees, admittedly an agency of the State of Illinois, is forbidden by the provisions of the Illinois Purchasing Act to break down a job or project into parts or sections, each of which involves not to exceed $1,500, and proceed to complete the same with its own labor, and the defendant contending that

this practice is not prohibited by the terms of the act. Plaintiffs contend that the cost of the labor of permanent employees must be added to the proposed job or project in determining the cost and that defendant has no option or discretion not to have the same performed by contract let upon prescribed bidding practices where the total cost including labor, materials, supplies, commodities and equipment exceeds $1,500. Defendant by its answer admitted that it plans and intends to continue to do repair, maintenance, remodeling, renovation and construction work in and about its buildings involving expenditure of State funds in excess of $1,500 with its own employees without advertising for bids for such work and without letting such work to a contractor submitting the lowest responsible bid "when this defendant finds that it is more advantageous and economical to perform such work with its own employees than it would be to let such work to a contractor upon the basis of competitive bidding therefor", and defendant denies that this will violate either the spirit or the letter of the act or any provision thereof.

The petition for declaratory judgment was filed pursuant to section 57.1 of the Civil Practice Act (Ill. Rev. Stat. 1959, chap. 110, par. 57.1), and the direct appeal to this court is predicated upon the provisions of section 75 of the Civil Practice Act which provides that appeals shall be taken directly to this Court "in all cases * * * in which the State is interested as a party or otherwise." (Ill. Rev. Stat. 1959, chap. 110, par. 75.) The sole defendant is the University of Illinois sued by its correct name "The Board of Trustees of the University of Illinois" which we have heretofore held is a corporation, separate and distinct from the State and no part of the State or State government, (*People ex rel. Board of Trustees of the University of Illinois* v. *Barrett*, 382 Ill. 321, 342,) but which is included within the definition of a "State agency" in the legislation here pertinent, since it expends or encumbers State funds

"by virtue of an annual or biennial appropriation from the General Assembly." (Ill. Rev. Stat. 1959, chap. 127, par. 132.3). We hold that we have jurisdiction to entertain this appeal since the State has a direct and substantial interest of a monetary character. Ill. Rev. Stat. 1961, chap. 110, par. 75(1)(b); *Illinois Public Aid Com.* v. *Massie,* 13 Ill.2d 498; *Smith* v. *Hodge,* 13 Ill.2d 197; *People ex rel. Moffett* v. *Turnbull,* 256 Ill. 532; *Retail Liquor Dealers Protective Ass'n* v. *Fleck,* 406 Ill. 24; *People* v. *Schallerer,* 12 Ill.2d 240.

The title of the Illinois Purchasing Act is "An Act in relation to state purchasing and contracts" approved July 11, 1957. Section 2 of the act provides:

"It is the purpose of this Act and is hereby declared to be the policy of the state that the principle of competitive bidding and economical procurement practices shall be applicable to all purchases and contracts for which state funds are expended."

Section 5 provides in part that:

"All purchases, contracts or other obligation or expenditure of funds by any State agency shall be in accordance with rules and regulations governing such State agency procurement practices and procedures which it shall promulgate and publish in sufficient number for distribution to persons interested in bidding on purchases or contracts to be let by such State agency."

The relevant provisions of section 6, as they existed in 1959, are as follows:

"The rules and regulations required by Section 5 of this Act shall provide, among other matters which are not in conflict with the policies and principles herein set forth:

"a. That all purchases, contracts and expenditure of funds shall be awarded to the lowest responsible bidder considering conformity with specifications, terms of delivery, quality and serviceability; except that bidding shall not be required in the following cases:

(1) Where the goods or services to be procured are economically procurable from only one source, such as contracts for telephone service, electrical energy, and other public utility services, books, pamphlets and periodicals, and specially designed business equipment;

(2) Where the services required are for professional, technical or artistic skills;

(3) In emergencies; provided that where funds are expended in an emergency by purchase, contract or otherwise, an affidavit of the person or persons authorizing the expenditure shall be filed with the Auditor General of the State of Illinois within 10 days after the purchase or contract setting forth the conditions and circumstances requiring the emergency purchase;

(4) In case of expenditures for personal services payable from an appropriation for personal services;

(5) Contracts for repairs, maintenance, remodeling, renovation, or construction, involving an expenditure not to exceed $1,500; * * *

"a—1. In case of contracts for the construction of buildings, or for other construction work in or about buildings and grounds, when the entire estimated cost of such work exceeds $25,000, separate specifications must be prepared for all equipment, labor and materials in connection with the following four subdivisions of the work to be performed:

1. Plumbing.

2. Heating, piping, refrigeration and automatic temperature control systems.

3. Ventilating and distribution systems for conditioned air.

4. Electric wiring.

"Such specifications must be so drawn as to permit

separate and independent bidding upon each of the above four subdivisions of work. All contracts hereinafter awarded for any part thereof, shall award the four subdivisions of the above specified work separately to responsible and reliable persons, firms or corporations engaged in these classes of work. Such contracts, at the discretion of the awarding authority, may be assigned to the successful bidder on the general contract work, with the provision that all payments will be made directly to the contractors for the four above specified subdivisions upon compliance with the conditions of the contract. A contract may be let for one or more buildings in any project to the same contractor. The specifications shall require, however, that unless the buildings are identical, a separate price shall be submitted for each building; the contract may be awarded to the lowest responsible bidder for each or all of the buildings included in the specifications."

Section 10 provides:

"Any contract entered into or purchase or expenditure of State funds made in violation of this Act or the rules and regulations adopted in pursuance of this Act is void and of no effect."

The trial court found by its judgment that the basic issue was whether the provisions of the Illinois Purchasing Act require that any and all repair, maintenance, remodeling, renovation, construction, or installation work performed by or for defendant, or for the State of Illinois or any State agency within the purview of the act, which will require expenditure of State funds in excess of $1,500 must be let out on contract as specified by the act or whether defendant, the State or any other State agency within the purview of the act, retains the option, which it had prior to its enactment, to perform said work with its own employees instead of letting it out on contract. The trial court then found that it was not the purpose and intention of

the General Assembly to abolish said option when the defendant, the State or such other State agency "finds and determines, in the exercise of the discretion vested in it, in good faith that it would be more economical, or would be more advantageous to the State or such agency and the taxpayers of the State for some other reason, to perform such work with its own employees instead of letting it out on contract and when the defendant has sufficient funds in an appropriation made to it 'For personal services,' as defined in Section 14 of the State Finance Act (§ 150, Ch. 127, Ill. Rev. Stat., 1961) with which to pay for said work when so performed."

The trial court finally found that "Defendant is not required by the provisions of the Illinois Purchasing Act to purchase all of the equipment and materials needed for a given project involving repair, maintenance, remodeling, renovation, construction, or similar work from a single source and to also award to that supplier the performance of that work, including the work of installing said equipment and materials, but, without thereby violating any of the requirements or provisions of said Act, may purchase portions of said equipment, and portions of said materials, constituting separate units, from one supplier, and other portions from others, when it finds and determines, in the exercise in good faith of the discretion vested in it by law, that it will be more economical to so purchase the same, even though the aggregate cost thereof exceeds $1,500, and it so purchases such equipment and such supplies for that reason and not for the purpose of evading or avoiding any of the requirements imposed by the provisions of said Act."

The gist of plaintiffs' argument for reversal is that the act requires that where an expenditure of funds for repair, maintenance, remodeling, renovation or construction exceeds $1,500, such work must be submitted on contract to the lowest responsible bidder, and that the act may not

be circumvented by splitting up a job or project into several items of cost in order to fall within the $1,500 exception provided in section 6a(5). Plaintiffs further contend that, in the alternative, if the Illinois Purchasing Act permits the splitting up of a project into labor and material because of the exception for personal services as provided in section 6a(4), then the defendant violates the Purchasing Act and the Finance Act (Ill. Rev. Stat. 1959, chap. 127, pars. 137 and 149-157) by paying the cost of labor to defendant's employees out of an appropriation for personal services for work done on projects properly classified as permanent improvements under the definition of a permanent improvement as set forth in section 21 of the State Finance Act, relating to the classification of objects and purposes of appropriations. This section provides:

"The item "permanent improvements" when used in an appropriation act, shall mean and include expenditures for the acquisition, enlargement or improvement of existing buildings and structures (other than repairs), the erection or construction on land of any structure or work which constitutes a substantial addition to real estate, including the total cost thereof in labor, materials and supplies and any other costs or charges necessary or incident to the completion of the building or structure but not including equipment as herein defined." Ill. Rev. Stat. 1959, chap. 127, par. 157.

We are called upon to determine the intention of the legislature when it adopted the Illinois Purchasing Act in 1957. The title of the act is clear in that it relates to State purchases and contracts. The public policy enunciated in section 2 declares that the principle of competitive bidding and economical procurement practices shall be applicable to all purchases and contracts for which State funds are expended.

Plaintiffs argue that the provisions relating to *"all*

*purchases, contracts or other obligation or expenditure of funds"* as set forth in sections 4, 5 and 6 of the act can have but one meaning and that is, that subject to the exceptions set forth in section 6, all expenditures of State funds shall be made only through the procedure of public competition in advertising for bids. Giving consideration to the title and to the express provisions of section 2 which limit the terminology to "purchases and contracts," we are constrained to hold that the legislature in using the terminology "or other obligation or expenditure of funds" in other sections of the act effectively meant obligations and expenditure of funds in 'connection with purchases and contracts by any State agency.

The cardinal rule in statutory construction is that the statute be construed so as to ascertain and give effect to the intention of the General Assembly as expressed in the statute. (*Lincoln Nat. Life Ins. Co.* v. *McCarthy,* 10 Ill.2d 489.) Section 1.01 of an act to revise the law in relation to the construction of the statutes (Ill. Rev. Stat. 1961, chap. 131, par. 1.01) provides: "All general provisions, terms, phrases and expressions shall be liberally construed in order that the true intent and meaning of the General Assembly may be fully carried out." We must consider the spirit of the enactment, and that spirit will control over the letter of the statute, where there is a conflict. (*U.S. Industrial Alcohol Co.* v. *Nudelman,* 375 Ill. 342, 345.) Here, the spirit of the Purchasing Act is clearly set forth in section 2 declaring that the principle of competitive bidding and economical procurement practices shall be applicable to *all purchases* and *contracts* for which State funds are expended. This indicates to us that the General Assembly did not intend to designate the principle of competitive bidding as being the only economical procurement practice.

This is a case of first impression, and we have found no statutes in sister States containing the broad language

of the act in question. In *State ex rel. Collins* v. *Halladay,* 62 S. Dak. 256, 252 N.W. 733 the Supreme Court of South Dakota construed a statute requiring all *contracts* for the erection and repair of buildings exceeding $500 to be let by competitive bidding, to permit the breaking up of the project into several smaller contracts, rather than a single one covering the entire job.

In *Perry* v. *City of Los Angeles,* 157 Cal. 146, 106 P. 410, the California Supreme Court construed a provision of the Los Angeles city charter providing that all contracts for the performing or furnishing of labor, materials or supplies for the construction or completion of any work or improvement in charge of the board of public works shall be let upon public bidding. That court held this did not preclude the city from doing public work by day's labor. The court said (p. 412): "Of course, where a statute or charter declares that any work must be let to the lowest bidder, there is no possible basis for any other construction than one making bids and contracts imperative. The omission from the Los Angeles charter of any such provision * * * is most significant. If it had been intended to require that whenever a proposed improvement would cost more than $500, the work must be done by contract let to the lowest responsible bidder, it would have been the simplest matter in the world to say so in plain terms, as has been said over and over again in other acts and charters."

In *Montana Chapter, National Electrical Contractors Association* v. *State Board of Education,* 137 Mont. 382 352 P.2d 258, a statute declaring it unlawful for any Montana State agency to "let any contract for the construction of buildings or the alteration, repair and improvement of buildings and grounds" involving $500 or more without public competitive bidding, was held not to prohibit the use of public employees to perform the work.

These cases and others cited by counsel establish that

only where the statute expressly prohibits the work from being done other than by contract let by competitive bids, or expressly requires the work to be let on contract, is the public agency prohibited from doing the work with its own employees. (43 Am. Jur. 733.) Unquestionably, prior to the enactment of the Illinois Purchasing Act, Illinois State agencies were not required to let out repair, maintenance construction, remodeling or other work on contract, but could perform such work with their own employees, (*People ex rel. Hanberg* v. *Peyton,* 214 Ill. 376; *Sanitary District of Chicago* v. *Blake Mfg. Co.* 179 Ill. 167) and could let contracts without competitive bidding, in the absence of a statutory or constitutional prohibition. *People ex rel. Adamowski* v. *Daley,* 22 Ill. App. 2d 87; *Smith* v. *Board of Education,* 405 Ill. 143, 148.

Defendant in this case contends the General Assembly did not intend to abolish the so-called "option" which State agencies had to perform work of the nature of the project here in question with its own employees. The record shows the chemistry building project to have cost about $155,000 as charged against the appropriations to the University of Illinois. Funds were also expended from sources other than these appropriations, so that the total cost of the project was in excess of $155,000.

The appropriated funds were charged as follows:

"Personal services ............$ 76,829.11  
Commodities ................    371.95  
Contractual services ..........  63,937.89  
Equipment ................    8,200.95  
Improvements ..............    5,029.07  
  
TOTAL .....'...........$154,368.97  
Job in Process..............    520.33  
  
TOTAL ...............$154,889.30"

We do not deem the fact that the total expenditures

exceeded $25,000 to be a violation of section 6 of the Illinois Purchasing Act (Ill. Rev. Stat. 1961, chap. 127, par. 132.6a—1) for the reason that the $25,000 provision of this section must be construed as referring only to expenditures pursuant to and work done under contract. There is no claim here made that any contract existed involving $25,000 or more.

Every individual purchase and contract involving more than $1,500 was made on the basis of competitive bids as required by the Purchasing Act. Labor for the project was charged to the personal service appropriation. The charges to contractual services and equipment should have been, and, we assume, were in accordance with bids where required. None of the individual items charged to improvements exceeded $1,500 in cost.

It appears to us that if the General Assembly intended to prohibit or limit the use of regular employees for services on permanent improvements as defined in section 21 of the Finance Act, it should have said so, as it did so provide in cases of cities and villages under 500,000 population (Ill. Rev. Stat. 1961, chap. 24, pars. 8—10—1 *et seq.*,) and had the legislature intended to limit or prohibit the practice of subdividing larger amounts into small units of less than $1,500, this could readily have been accomplished in the manner provided by section 8—10—6, which prohibits the responsible head of each department from splitting into small parts any "undertaking involving amounts in excess of $2,500 * * * so as to produce amounts of $2,500 or less, for the purpose of avoiding the provisions of this Division 10." See, also, section 6—201.7 of the Illinois Highway Code (Ill. Rev. Stat. 1961, chap. 121, par. 6—201.7) " * * * nor shall several contracts each for an amount of $1,000 or less be let for the construction or repair of any road or part thereof when such construction or repair is in reality part of one project costing more than $1,000, nor shall any material, machinery or other appliance

to be used therein be purchased under several contracts each for an amount of $1,000 or less, if such purchases are essentially one transaction amounting to more than $1,000, * * *." The fact that such prohibition is absent is persuasive of the legislative intent to permit a continuation of the practice.

The case of *City of Chicago* v. *Hanreddy,* 211 Ill. 24, cited by plaintiffs, involved section 50 of article IX of the Cities and Villages Act of 1872 which provided that "any work or other public improvement, when the expense thereof shall exceed $500, shall be let to the lowest responsible bidder, * * *." We there held (p. 32) that "No discretion is thereby conferred upon the city or any of its officers as to whether the work or improvement shall be constructed under contract or by day labor, but it is clear if the work or other public improvement will exceed in cost the sum of $500 it *must* be let to the lowest responsible bidder after advertising for bids." (Emphasis supplied.) That case involved an express requirement relating to the "work or other public improvement." Our holding in *Hanreddy* is distinguishable from the instant case for the reason that we here hold that the Purchasing Act refers only to contracts and purchases, and contains no express requirement that the work be done by contract let upon competitive bidding. The statute in *Hanreddy* left the city of Chicago no such option.

We therefore hold that the Purchasing Act is not violated when a State agency in good faith determines that it is more economical to perform repair, maintenance, remodeling, renovation, construction or installation work with its own employees, and pays them from funds appropriated for "personal services." We further hold that the Purchasing Act is not violated when a State agency, in good faith and without intent to evade or avoid the provisions of said act, determines that it is more economical to purchase equipment and materials in individual units of not more than $1,500 in cost, and does so, without regard

to the total of such purchases, so long as such purchases are charged to the proper appropriation.

The judgment of the circuit court of Champaign County is therefore affirmed.

*Judgment affirmed.*