(No. 5226— ▮▮▮▮▮▮▮▮▮▮▮▮▮)

P. H. BROUGHTON and SONS, INC., A Corporation, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 9, 1967.*

HOWARTH, HOWARTH and WALBAUM, Attorneys for Claimant.

WILLIAM G. CLARK, Attorney General; LEE D. MARTIN, Assistant Attorney, for Respondent.

PEZMAN, J.

This is a claim by P. H. Broughton & Sons, Inc., a Corporation, against the State of Illinois for $17,822.00 allegedly remaining due to claimant from respondent for grading, blacktopping and maintenance work done by claimant at the State Fairgrounds, Springfield, Illinois, during the period of May 18, 1964 through August 10, 1964.

The grading, blacktopping and maintenance work performed by claimant was performed at twenty-four individual job sites on the State Fairgrounds pursuant to twenty-four individual written proposals prepared by claimant. Each proposal covers a separate job site. Each proposal is for an amount less than $1,500.00. The twenty-four proposals total $30,662.00. Claimant received payment on ten (10) of the proposals totaling $12,840.00. Claimant has never received payment on the remaining fourteen (14) proposals.

The evidence in this case indicates that each of the twenty-four proposals was prepared by Mrs. Irma Broughton, claimant's bookkeeper, within a few days after claimant's job estimator, William Broughton, had gone to the State Fairgrounds at the request of either Franklin Rust, Director of the State Fair, or his assistant, Louis London, to estimate the cost of a particular job. Rust or London would take William Broughton around to various job sites, and show him the work for which they wished proposals prepared. The necessary data would then be communicated by William Broughton to Irma Broughton, and the proposal prepared. Each proposal was then mailed or delivered to Rust's office.

Thereafter, either Rust or London would advise William Broughton that the quoted price was satisfactory, and direct claimant to commence the work called for by the particular proposal.

Fair Director Rust and Assistant Director London concede that they were authorized to commit respondent for payment for the work performed by claimant. Both Director Rust and Paul Prince, Superintendent of Maintenance, State Fairgrounds, admit that they were aware that claimant was doing the work for which it has not yet been paid. Both Rust and Prince, however, deny that they personally authorized the specific work to be done. Rust claims that he had delegated the authority to London to handle these types of matters. London claims that the unpaid proposals and the work performed pursuant thereto were never discussed with him by either Broughton or Rust, and that he never personally observed any of this work being performed until it was completed. The preponderance of the evidence in this case contradicts London's testimony that he did not authorize the unpaid portion of the work as distinguished from the work for which claimant has been paid, and his testimony that he did not notice claimant's men or machinery performing the work called for by the unpaid proposals.

Respondent raises two defenses: (1) that the unpaid work was not authorized; (2) that it was performed in contravention of statutory requirements. It is the opinion of this Court that the evidence in this case does not support respondent's defense that the unpaid work was not authorized. The evidence clearly establishes that said work was orally authorized by either Rust or London, and that Rust, London and Prince were aware

at all times that the work was being performed by claimant. The offices of these men are at the Fairgrounds, and the work being performed was essential to the orderly and timely opening and operation of the Illinois State Fair for that year. These officials were directly responsible for maintenance of said Fairgrounds, and could not have been present upon the grounds without being conscious of the work being performed by claimant.

The substance of respondent's second defense is that the work performed was in violation of the Illinois Purchasing Act, which requires that contracts for repairs, maintenance, remodeling, renovation, or construction involving an expenditure in excess of $1,500.00 be advertised for bids, and awarded to the lowest responsible bidder considering conformity with specifications, terms of delivery, quality and service-ability. It is the contention of respondent that claimant made many separate agreements, each for less than $1,500.00, to circumvent the requirements of the Illinois Purchasing Act. Respondent directs the Court's attention to Par. 132.10 of the Act, which declares that any contract entered into for expenditure of State funds, which violates the Act, is void and of no effect.

The evidence in this case indicates that there was a proposal made for each individual project; that each proposal was submitted to respondent before that project was commenced, and that work was not commenced on each project or proposal until claimant was advised by respondent that its proposal had been accepted.

Claimant contends that the case of *F. R. Inskip, et al*, vs. *The Board of Trustees of the University of Illinois,* 187 N.E. 2d 201, 26 Ill. 2d 501 (1962), is directly

in point, and that said case holds that the General Assembly did not intend to designate in the Illinois Purchasing Act the principle of competitive bidding as the only accepted economical procurement practice. Respondent contends that the Inskip case is not in point, and should have no bearing on this matter.

The Illinois Supreme Court in the Inskip case stated that:

"We further hold that the Purchasing Act is not violated when a State Agency, in good faith and without intent to evade or avoid the provisions of said act, determines that it is more economical to purchase equipment and materials in individual units of not more than $1,500.00 in cost, and does so, without regard to the total of such purchases, so long as such purchases are charged to the proper appropriation."

It is the opinion of this Court that, while the fact situation in the Inskip case differs from the case at bar, the language used by the Court in the Inskip case and quoted above is sufficiently broad to apply to differing situations including the case at bar.

The Illinois State Fairgrounds is a vast and complex facility, which requires a large amount of maintenance and repair at various times during the year. The evidence indicates that it was the policy of respondent to take care of this maintenance and repair as the need for specific work developed or became apparent, instead of attempting to prepare detailed plans and specifications for an annual competitive letting of the work. A competitive bid letting of a season's work would have been very difficult or impossible, because the work was composed primarily of small jobs of maintenance, black-topping parking spaces, seal-coating and grading roads, which were observed and spot-checked from time to time as winter damage and spring thaws made the need for the work to be done apparent.

Respondent offered no proof whatever that claimant wilfully sought to evade the provisions of the Illinois Purchasing Act. Respondent offered no proof that claimant and Rust or London entered into any contracts with the intention of splitting up a single job or project into several jobs or items of cost in order to fall within the $1,500.00 limit, and thereby avoid the requirements of the Illinois Purchasing Act. Each of the proposals in question was for work at a separate site at various times within the large complex comprising the State Fairgrounds, and it is our opinion that each proposal properly constituted a separate job, project or contract, and that each proposal did not constitute a portion of one job or project of maintenance and repair as contended by respondent.

In the absence of such proof, it is the opinion of this Court that claimant did not violate the provisions of the Illinois Purchasing Act; that claimant entered into twenty-four separate contracts with respondent; that by reason of the fact that each was for less than $1,500.00 the Illinois Purchasing Act did not apply to said contracts, and, that claimant is, therefore, entitled to payment on the remaining fourteen proposals, which are unpaid, in the sum of $17,822.00.

Claimant is awarded the sum of $17,822.00.