(No. 6291

NILE MARRIOTT, INC., Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed June 15, 1973.*

JOHN E. HOWARTH, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; WILLIAM E. WEBBER, Assistant Attorney General, for Respondent.

HOLDERMAN, J.

Claimant seeks to recover the sum of $2,980 for services and materials rendered to the Department of Law Enforcement.

The above amount is for two separate and distinct transactions—one for $1,495 and the other for $1,485.

The evidence discloses that the Department of Law Enforcement had entered into a contract with the claimant for certain work to be done in its office. The contract was for $26,533. All of this work was to be done at the Illinois State Police Headquarters on the fourth floor of the Armory Office Building, Springfield, Illinois.

After the work started, it was discovered that the architect for the State had inadvertently left out the work to be done in the removing of one existing door and frame,

which necessitated the contractor closing up the doorway which was in a wall requiring masonry work. The bill for these services was $1,485.

The other changes which were made included the installation of two 14 gauge steel frames, providing electrical conduits, piping and carpentry work, providing cork in the north wall of the Assistant's office, in the west wall of the Superintendent's office, in the south wall of the file enclosure by the receptionist's desk, and to carpet and paint all walls and ceilings in the Legal Counsel's office. Two solid oak doors were also installed for which no charge was made. The bill for these services was $1,495.

Request for payment of these two changes was made and payment was rejected by the State on the grounds that the contract was subject to Article 23 of the General Conditions, which is included in all contracts for the State for over $5,000. It appears that in all contracts of over $5,000, competitive bids must be taken to comply with the Illinois Purchasing Act.

For projects between $1,500 and $5,000, the using agency, with the aid of the Architect's office, requests bids from two or three contractors and is required to place a request for public bids in the local paper.

For projects under $1,500, the using agency is required to get one bid and send it to the Architect's office for review.

A witness for the respondent testified that the written record in his office did not indicate the changes made by claimant for which he is seeking payment and that the only payment requisition, which was received on September 11, 1970, did not contain the subject matter of these claims.

The witness for the State in charge of these matters stated that it normally takes a month to six weeks to put

through a change order. He further testified that his record shows that the requisitions for payment of these two changes were sent to his office for processing on June 30, 1971, and July 1, 1971.

Claimant relies on the Departmental Report filed as prima facie evidence that the work was necessary, performed in a satisfactory manner, for a reasonable price, and that no payment has been made.

The State cites numerous cases to the effect that an action will not lie against the State on quantum meruit for services rendered.

Among them are numerous Court of Claims cases, the last ones being *Schutte, et al* vs. *State of Illinois*, 22 C.C.R. 591, *Fergus* vs. *Brady*, 277 Ill. 272, *Johnson County Savings Bank, et al* vs. *City of Creston*, 212 Iowa 929, 87 ALR 926, and *United States Rubber Products* vs. *Batesburg*, 110 ALR 144.

The respondent also cites the case of *Illinois Central Railroad Co.* vs. *State of Illinois*. In this case, the State of Illinois employees authorized the Illinois Central Railroad Company in writing to make certain repairs to the tracks on the grounds of the Kankakee State Hospital, and it appears that this had been the custom for many years. The Court, in passing upon this case, refused to allow recovery by the claimant, stating that a contract entered into by persons not authorized by law to bind the State and by persons not adhering to procedures prescribed by statute, such as having the contract approved "by the State architect or his consulting engineer and by the board, if they exceed in value one thousand dollars, and by the fiscal supervisor, if they exceed in value two hundred dollars" is not allowable.

It is claimant's contention that this work was done by the verbal authorization of agents of the State and that he was assured by the State's project coordinator that the

projects were authorized.

Upon examination of the testimony of the various individuals of the State dealing with the claim in this matter, the following facts are disclosed.

Captain Denzil G. Wills, who was project coordinator for the Illinois State Police, testified that the architect had inadvertently left out the plans to fill in a door between Rooms No. 2 and No. 3, which was done. His testimony is to the effect that he understood the contractor was authorized to make these changes and he assumed the necessary changes had been made.

As to the other changes that were made approximately two months later, he stated that there had been frequent bombings around the country, and as this was State Police Headquarters, they wanted to increase the security in the area, and in furtherance of this situation, they requested the contractor to put in electrical wiring and conduits, and also two solid oak doors. It is his testimony that this was the Central Office of the State Police where all the files, records and equipment, etc. were kept, that there had been attacks made upon other Police Headquarters in the State, that it was their desire to protect the record system, and that they desired later to put in security equipment which would require the electrical conduits that were put in at that time. He further testified that if they were not put in at that time, it would necessitate considerable expense and much delay in the tearing up of the area in question and redoing the work.

He further testified that two oak doors were put in at their request, which was not in the original contract, and that there was no charge made for these doors. He stated that these changes were made after a meeting between the Major and the Superintendent and that they had other plans made but could not complete the whole project in this fiscal

year. Since they did not have sufficient money to do everything desired, they wanted to do as much as they possibly could while this contractor was working there. The witness also stated that Major Walter A. Eichen desired to have security doors put in so that eventually they could install closed circuit T.V., and that if that was to be done, it was imperative that the work done by the claimant be done at the time it was done.

Sgt. Robert H. Klemm also testified in this matter. His testimony was to the effect that the architect made an error in leaving out the door which was later closed in and that it was necessary that this be done. He also testified that there were two solid oak doors added and that two doorways were framed in with heavy gauge steel to accommodate other doors which were to be put in later to increase security for the Police Department. This witness also testified that there had been several attempts to bomb police facilities in the State, that some were bombed, and that it was desirous to make these changes for additional protection. He also stated that he discussed this matter with Supt. McGuire, Major Eichen, and Mr. Sheehan, who was the building construction inspector for the program and worked for the Department of Architecture and Engineering for the State of Illinois. He stated there was a conversation between Mr. Dunlap and the contractor relative to these changes. Mr. Dunlap, who was the project coordinator between the Architect and Engineering and the State Police, was in charge of this particular project. This witness also testified that it was completed in a good workmanship-like manner and that it was necessary for his department to have this done during the course of the work.

Mr. Sheehan testified on behalf of the State that he was the building construction inspector and was employed by the office of Supervising Architect. He further testified that

he was aware certain changes had been made in the work done in reference to the contract. The first change that he testified to was the closing of the doorway which had been left out, that he had a conversation with Mr. Dunlap and Mr. Bill Wood, who was the superintendent for Nile Marriott. He testified that the Marriott concern was authorized to go ahead and change the door after a discussion with Mr. Dunlap. He further testified to the second change which no one had previously thought about. He stated that Mr. Dunlap was the individual who had authorized the change. He further testified that he assumed the necessary change orders had been put through and was quite confident they had been. He stated that he didn't like them going ahead unless he specifically had a change order. He further testified that the work was completed in a good workmanship-like manner and that the materials were the standard type of materials used for construction. On cross examination, he also testified to the fact that cork was inserted in the wall behind the secretaries' office so that it would have a quieting effect, and that all of the changes were necessary. He stated that his reasons for the changes being necessary were money, time and from a security standpoint. He also testified that he was not sure whether he had seen any written change order.

Mr. Clarence Burkhart testified for the respondent that he was Project Administrator in the office of Supervising Architect and that he was familiar with the project. He testified as to the procedure necessary in making changes in contracts which agreed with the position of the respondent in this particular case. He further testified that the changes made were not sent to his office for review.

Mr. Marriott, the claimant who testified in this case, said that in his conversation with Mr. Dunlap, Mr. Dunlap stated that he would start his portion of the paper work and instructed the contractor to go ahead with the work.

It is clear from the evidence in this case that the claimant did the work at the direct request of the respondent and that their agent in charge, Mr. Dunlap, had indicated that he would see that the necessary paper work was done.

It is equally clear from the evidence that the changes were necessary and that by making these changes at the time they were made, the State was saved a very considerable amount of money.

It is further clear from the evidence in this case that these changes were, in the testimony of the respondent's own witnesses, a matter of emergency, particularly for security purposes.

It also appears in the record that there was a sum of $5,804.32 that was available for payment of this particular item.

In the case of *Inskip* vs. *Board of Trustees, University of Illinois*, 187 N.E. 2d 201, 26 Ill. 2d 501, the Court goes into considerable discussion as to the intent of the legislature and in the interpretation of the Purchasing Act. It was the opinion in that case "that the General Assembly did not intend to designate principals of competitive bidding as the only economical procurement practice." In *Inskip*, supra, the court construed the provisions of the Act and were called upon to determine the intention of the legislature when it adopted the Illinois Purchasing Act of 1957. In construing the statute, they made specific findings as to the intention of the legislature which, claimant argues, is controlling here; that: " . . . the Purchasing Act is not violated when a state agency, in good faith and without intent to evade or avoid the provisions of said act, determines that it is more economical to purchase equipment and materials in individual units of not more than $1500 in cost, and does so, without regard to the total of such purchases, so long as such purchases are charged to

the proper appropriation."

Claimant also cites the case of *Elevator Manufacturing of America* vs. *State of Illinois*, 23 C.C.R. 98. In this case, claimant filed a claim against the State for labor and materials for removing, repairing and reinstalling a burned out motor for an elevator in the Chicago State Hospital, Chicago, Illinois. In that case, as in the present case, there was a departmental report to the effect that the claimant did remove, repair and reinstall the motor, the work was necessary, the cost was reasonable, and the work was excellent. The Court held that this was an emergency matter and therefore should be paid.

It appears to the Court that this was an emergency matter, that the work was done well, the cost was reasonable, the materials were the usual standard, that it was beneficial to the State to have the work done at this time rather than at a later time at a considerable cost, and that there was a prime need for speed in the completion of this work for security purposes.

This Court is therefore of the opinion that the claimant did not violate the Illinois Purchasing Act, Chapter 127, par. 132.5; 132.6; 132.10 because the work for which the claimant seeks an award was done at two different times, with an interval of approximately six weeks between them, and with each requisition being under $1,500.

It is further held that purchases done in good faith and without intent to evade or avoid the provisions of the Illinois Purchasing Act are not in violation of said Act when the State agency determines it is more economical to make purchases in individual units of not more than $1,500 so long as such purchases are charged to the proper appropriation. *Inskip* vs. *Board of Trustees, University of Illinois*, 187 NE 2d 201, 26 Ill. 2d 501.

These facts, connected with the verbal authorization to

proceed with the work and the emergency that presented itself at this time, are, in the opinion of the Court, sufficient to entitle the claimant to an award in the amount of $2,980.

An award is hereby entered for said amount.