(No. 22960.—

F. N. CLOYD, Appellee, *vs.* THE COUNTY OF VERMILION, Appellant.

*Opinion filed June 14, 1935.*

Oliver D. Mann, State's Attorney, and O. M. Jones, for appellant.

Acton, Acton & Baldwin, (W. M. Acton, of counsel,) for appellee.

Mr. Justice Farthing delivered the opinion of the court:

Appellee, F. N. Cloyd, a physician, sued appellant, the county of Vermilion, for the value of medical and surgical services he had rendered to two persons. The county filed a motion in the nature of a demurrer asking that the complaint be dismissed. The motion was overruled, the county elected to stand by its motion, evidence was heard and a judgment rendered in favor of appellee for $366. The county appealed directly to this court for the reason that its motion challenged the constitutionality of section 24 of the Pauper act, (Smith's Stat. 1933, chap. 107, par. 25, p. 2180; Cahill's Stat. 1933, p. 2122;) upon which the suit was based.

The first of the two counts in the complaint alleged that on May 17, 1932, William Mortenson, a twelve-year-old boy, was struck and severely injured by an automobile while he was riding a bicycle in the village of Rankin, Butler township, Vermilion county; that the overseer of the poor of that township sent the boy to a hospital in Danville and requested Dr. Cloyd to render the necessary medical and surgical services. This count alleged that the boy and his parents resided in the town of Butler and that they had not previously been receiving township or county relief but that they were unable to pay for these services. In the second count it was alleged that Henry Harris broke a leg on October 28, 1933, in the town of Danville, Vermilion county; that he was a non-resident of Vermilion county; that he was a transient; that he was not a person coming within the definition of a pauper; that Dr. Cloyd furnished the necessary surgical and medical services and that Harris was unable to pay, and that there was no reasonable opportunity to notify the overseer of the poor of Danville township before rendering these services to Harris. Both counts are based expressly on section 24 of the Pauper act.

The county's motion to dismiss specified only two grounds: First, that the section relied on as a basis for the suit was unconstitutional in that its subject was not within the title of the act, contrary to section 13 of article 4 of the State constitution; and second, that in both cases the township, and not the county, was liable for the services rendered by Dr. Cloyd.

The statute in question is entitled, "An act to revise the law in relation to paupers." Section 24 reads: "When any non-resident, or any person not coming within the definition of a pauper, of any county or town, shall fall sick or die, not having money or property to pay his board, nursing and medical aid or burial expenses, the overseer or overseers of the poor of the town or precinct in which he may be shall give, or cause to be given to him such as-

sistance as they may deem necessary and proper, or cause him to be conveyed to his home, and if he shall die, cause him to be decently buried; and the county shall pay the reasonable expense thereof, which expenses of board, nursing, medical aid and burial expenses, may be recovered from the relatives of the said pauper, or from the county of which he is a resident, in an appropriate action."

The county's contention is, that since the title of the act is limited to "paupers," this section is unconstitutional because it deals with persons who are not paupers but who are not able to support themselves or pay for board, nursing, medical and surgical services in case of illness, or for burial if they are overtaken by death.

Section 13 of article 4 of our constitution was intended to prevent the collation of divergent or unrelated subjects of legislation and to prevent the enactment of what would not have been enacted if it had been put upon its passage separate and apart from the act of which it might be made a part. The section's provisions were not intended to impede legislation but to protect the people against unwise legislation being passed without notice to the people or to the legislature itself and to prevent both the people and legislature from being deceived by the title of a bill. There is nothing contained in this section which requires the title of an act to give all the details of the proposed law or a table of its contents. If the title informs the members of the General Assembly and the public as to the subject matter it meets the requirements of this section of the constitution. (*Reif* v. *Barrett,* 355 Ill. 104, 124.) This constitutional provision has been liberally construed in favor of the validity of statutes. To render a provision in the body of a statute void for not coming within the title, such provision must be incongruous or have no proper connection with or relation to the title. (*Swierczek* v. *Baran,* 324 Ill. 530; *People* v. *McBride,* 234 id. 146.) The rule is well settled that if the words of the title, when taken in any

sense or meaning which they reasonably bear, are sufficient to cover the provisions of the statute, the act will be sustained although such meaning may not be the most obvious or common. (*People* v. *City of Chicago*, 349 Ill. 304, 329; 1 Lewis' Sutherland on Stat. Const. (2d ed.) sec. 127.) Webster's International Dictionary defines a pauper as a very poor person; a person destitute of means except such as are derived from charity; one who receives aid from public poor funds. Those mentioned in section 24 who are unable to pay for nursing, medical expenses or their burial expenses if they die are certainly included in the commonly understood meaning of the word "pauper," even though they may not be paupers in the technical, legal definition of the word. In such emergency they must receive aid from the public poor funds or from charity.

But there is another reason why the matters dealt with in section 24 come within the title of the act. Although the earlier part of the section purports to deal with "any person not coming within the definition of a pauper," the closing words of the section are, "which expenses * * * may be recovered from the relatives of the said pauper." By this language the legislature definitely included such persons in the class designated as "paupers" in the title of the act.

The county's second contention is, that by the amendment of 1931 to section 15 of the act the township in which an accident occurs is liable for such services as appellee rendered in these two cases. It says that section 15 makes townships liable for the support of the poor in counties of less than 500,000 population under township organization, in which class Vermilion county falls. It also contends that such counties have no authority to levy a tax to pay for the services described in the complaint. Appellant overlooks the fact that since the amendment of 1931, section 14, which deals with counties not under township organization, and section 15, cover only those persons who

are technically paupers. On the other hand, section 24 deals explicitly with emergency cases arising among those persons not technically paupers but who are nevertheless unable to pay the necessary expense incident to their illness or death. As has been pointed out, the legislature has by express language designated such a person a pauper, and it has also definitely placed the burden of such cases upon the county. Section 23 does not apply to one who would be able to support himself were it not for the emergency of illness, death, etc., but applies to poor or indigent persons who are not required to be wholly supported by the county or town, and provides that the overseer of the poor may render such persons relief without committing them to the poor-farm. It is not contended that the boy Mortenson or his parents, or Harris, were paupers in the technical sense of being wholly dependent on public charity or poor relief funds for their support, or that they had been partly dependent previously so as to come within section 23. They came clearly within section 24.

The contention is without merit that there is no provision for a tax levy on the part of the county to cover the cost of the services sued for. Section 25 of the Counties act (Smith's Stat. 1933, chap. 34, par. 25, p. 844; Cahill's Stat. 1933, p. 840;) confers power on the county board to levy taxes for county purposes. This is broad enough to include the liability imposed on counties by section 24 of the Pauper act.

The point that the word "non-resident," in section 24, refers to non-residents of the State, and that there is no showing that the transient, Harris, was such a non-resident, was not made in the trial court and cannot be raised here.

The trial court properly overruled appellant's motion, and its judgment is affirmed. *Judgment affirmed.*