**An Association of Franciscan Sisters of the Sacred Heart, Trading as St. Elizabeth Hospital, et al., Appellees, v. County of Vermilion, Appellant.**

**Gen. No. 9,225.**

244

Heard in this court at the January term, 1940. Opinion filed March 11, 1940.

OLIVER D. MANN, State's Attorney, and THOMAS C. STIFLER, Assistant State's Attorney, for appellant.

ACTON, ACTON & BALDWIN, of Danville, for certain appellees; W. M. ACTON, of counsel.

BOOKWALTER, CARTER & GUNN, of Danville, for certain other appellee; HORACE E. GUNN, of counsel.

MR. PRESIDING JUSTICE RIESS delivered the opinion of the court.

The plaintiffs appellees, consisting of two nonprofit sharing hospital corporations and six practicing physicians of the city of Danville, Illinois, joined in a suit in the circuit court of Vermilion county against the town of Danville and the county of Vermilion seeking recovery of various amounts alleged to be due and payable to the respective plaintiffs under the provisions of par. 15.1, sec. 15, par. 25, sec. 24, ch. 107, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 98.15, 98.27], for the reasonable expense of board, nursing and medical services furnished to certain named persons not having money or property to pay therefor who fell sick within

said town and county, but did not come within the definition of a pauper, which care and service was so rendered at the direction of the overseer of the poor of the town of Danville, and for which amounts judgments were prayed in the alternative against said respective defendants.

Motions in the nature of a demurrer were severally interposed by the defendants disclaiming liability under the provisions of said statutes. The motion was allowed and the suit dismissed as to the town of Danville, but was denied as to the county of Vermilion, which then stood by its motion, and on evidence heard, judgment was entered against the county of Vermilion and in favor of the respective plaintiffs for the amounts of their several claims, aggregating $1,732.40, and 10 in number, from which judgments the said defendant has appealed. Plaintiffs have also perfected an appeal from the court's action in dismissing the suit as to the defendant Town of Danville, thus bringing the entire record before this court for review. It was stipulated by the parties that the facts recited in the complaint were true.

It is the sole contention of the defendant county that paragraph 25, section 24, *supra,* as amended, under the provisions of which the judgment was rendered, does not apply to said county and that under a proper application of the doctrine of ''ejusdem generis,'' the language thereof should be so construed as to exclude from liability all cities, villages, counties or towns having a population of less than 500,000 inhabitants.

The plaintiffs and codefendant town of Danville have filed a joint reply brief wherein they contend that under the facts as stipulated and proven and the plain language and provisions of said section, the county of Vermilion is so liable and that said doctrine has no application herein.

In two recent opinions of courts of review of this State, the language of section 24 was under discussion.

In *Cloyd v. County of Vermilion,* 360 Ill. 610, 196 N. E.
802, it was contended by the appellant in its motion to
dismiss the complaint and upon appeal that (1) the
section relied on as a basis for the suit was unconsti-
tutional in that its subject was not within the title of
the act, (section 13 of article 4 of the State constitu-
tion), and (2) that on both of the claims for medical
services rendered, whereon judgment was entered, the
township and not the county was liable for the serv-
ices so rendered by Dr. Cloyd, who was the plaintiff
in that case. Both contentions of the appellant were
held to be without force.

At that time, section 24 of the Pauper Act (Smith's
Stat. 1933, ch. 107, ¶ 25, p. 2130; Cahill's Ill. St. 1933,
p. 2122), read as follows:

"When any non-resident, or any person not coming
within the definition of a pauper, of any county or
town, shall fall sick or die, not having money or prop-
erty to pay his board, nursing and medical aid or burial
expenses, the overseer or overseers of the poor of the
town or precinct in which he may be shall give, or
cause to be given to him such assistance as they may
deem necessary and proper, or cause him to be con-
veyed to his home, and if he shall die, cause him to
be decently buried; and the county shall pay the rea-
sonable expense thereof, which expenses of board, nurs-
ing, medical aid and burial expenses, may be recovered
from the relatives of the said pauper, or from the
county of which he is a resident, in an appropriate
action."

Concerning the appellant's contention therein that
section 15 of the above chapter as amended in 1931
(Laws of Illinois, 1931, p. 725, par. 15) created a lia-
bility against counties of less than 500,000 population
when under township organization, to which class Ver-
milion county belongs, the above court says at p. 614,
*supra,* that: "Appellant overlooks the fact that since
the amendment of 1931, section 14, which deals with

counties not under township organization, and section 15, covers only those persons who are technically paupers. On the other hand, section 24 deals explicitly with emergency cases arising among those persons not technically paupers but who are nevertheless unable to pay the necessary expense incident to their illness or death. As has been pointed out, the legislature has by express language designated such a person a pauper, and it has also definitely placed the burden of such cases upon the county.''

Subsequent thereto, said section 24 was last amended by an act approved March 6, 1936 (Laws of Illinois, 1935–36, Second Special Session, pp. 73, 77, sec. 24), to read as follows:

''When any non-resident, or any person not coming within the definition of a pauper, of any *city, village or incorporated town having a population of more than 500,000 inhabitants, county or town,* shall fall sick or die, not having money or property to pay his board, nursing and medical aid or burial expenses, the overseer or overseers of the poor of the *city, village or incorporated town, town or precinct in which he may be* shall give, or cause to be given to him such assistance as they may deem necessary and proper, or cause him to be conveyed to his home, and if he shall die, cause him to be decently buried; and the county shall pay the reasonable expense thereof, which expenses of board, nursing, medical aid and burial expenses, may be recovered from the relatives of the said pauper, or from the county of which he is a resident, in an appropriate action.''

This section, as so amended, together with the above section 15 concerning the liability of towns for the support of poor and indigent persons, was construed in the recent case of *Buckmaster v. County of Effingham,* 302 Ill. App. 353.

In that case, it was held by the Appellate Court of the Fourth District that under said section 24 of the

Pauper Act, as so amended, the county was liable to pay for emergency medical services furnished to persons who were not technically paupers but who were nevertheless unable to pay the necessary expenses of their illness and that the county could not disclaim such liability on the ground that the township was liable for such expenses under the provisions of section 15 of said act. In that case, a group of physicians had filed suit under the provisions of said sections 15 and 24 against the county of Effingham and the town of Mason to recover the value of medical and surgical services rendered to various persons (not defined as paupers), who were residents of the town and county and who were not financially able to pay for such services.

The trial court held that the town and not the county was liable therefor, and upon appeal, it was held e contra that the county and not the town was liable under the above provisions, and the cause was reversed and remanded with directions to proceed in accordance with the views set forth in the court's opinion.

Counsel therein sought to distinguish the application of said sections 15 and 24 in that case from the rule announced in the *Cloyd v. County of Vermilion* case, *supra,* but the court held against the construction of section 24 contended for by counsel and therein used the following language (p. 358): ''The function of the courts is to construe and not to enact legislation. Nor can we sanction atrophy or nullification of legislative enactments under the guise of judicial interpretation in violation of express language of legislative enactments. Section 24 clearly establishes an obligation upon the county to pay for the medical and surgical expenses of those persons who are not technically paupers, but who are nevertheless unable to pay the necessary expenses of their illness. In the instant case it was expressly alleged in the complaint that the father was able to provide the necessities of life for his family and children in health. Under the express pro-

vision of section 24, as consistently interpreted in the case of *Cloyd v. County of Vermilion, supra,* the burden of such expenses is imposed on the county.''

In the instant case, the appellant further contends that the inclusion in said amended section 24 of the added clause ''city, village or incorporated town having a population of more than 500,000 inhabitants'' before the words ''county or town,'' which thereby changes the opening lines of said section 24 to read as follows: ''When any non-resident, or any person not coming within the definition of a pauper, of any *city, village or incorporated town having a population of more than 500,000* inhabitants, shall fall sick or die,'' etc., restricts all liability under the doctrine of ''ejusdem generis'' to cities, counties and towns having a population of more than 500,000 inhabitants.

With this contention we cannot agree. It does violence to the intent and provisions of the entire act, when the language thereof is construed together, and to its intent, purpose and meaning as heretofore construed by our courts of review. We do not deem the case of *Bullman v. City of Chicago,* 367 Ill. 217, 10 N. E. (2d) 961, and other cases cited by the appellant to be applicable to the language of section 24, as amended, nor as an aid in construing the clear and well-settled intent and meaning thereof. The doctrine of ''ejusdem generis'' never applies where it would do violence to the manifest intent of the legislative act.

Qualifying words are made applicable to those preceding and not extended to the following words, unless such extension or inclusion is clearly required by the intent and meaning of the context or disclosed by an examination of the entire act. This rule of construction accords with the well-recognized doctrine of the ''last antecedent clause'' and finds clear application herein rather than a forced construction which would nullify the meaning and intent of the act as heretofore construed by the courts and as set forth in the language thereof. *Stevens v. Illinois Cent. R. Co.,* 306 Ill. 370,

137 N. E. 859; *Tribune Co. v. Thompson*, 342 Ill. 503, 526, 174 N. E. 561. It is the proper function and duty of courts to construe and not to enact legislation nor to nullify valid legislative enactments.

In dismissing the suit against the town of Danville and in entering judgment against the County of Vermilion, the action of the trial court was in accord with the provisions of the statute. The proofs and stipulations of the parties as to the facts brought the plaintiff's cause of action against the county within the express terms and provisions of the above act.

Finding no reversible error in the record, the judgment of the circuit court of Vermilion county will be affirmed.

*Judgment affirmed.*