(No. 39593.—

ELECTRICAL CONTRACTORS ASSOCIATION OF CITY OF CHICAGO, INC., *et al.*, Appellees, *vs.* ILLINOIS BUILDING AUTHORITY *et al.*, Appellants.

*Opinion filed Jan. 19, 1966.—Rehearing denied Jan. 25, 1966.*

Cummings & Wyman, of Chicago, for appellants.

Tenney, Bentley, Guthrie & Howell, Jonas & Jonas, and Katz & Friedman, all of Chicago, for appellees.

Jeremiah Marsh, of Chicago, for *amicus curiae* Better Government Association.

Mr. Justice Underwood delivered the opinion of the court:

This is an appeal from the circuit court of Cook County which, in an action for declaratory judgment, held defendant Illinois Building Authority, an appellant herein, subject to the provisions of the Illinois Purchasing Act and thereby required to solicit separate bids for specific mechanical subdivisions (plumbing, air conditioning, electrical wiring and heating) of building construction work as provided by section 6a—1 of the Illinois Purchasing Act (Ill. Rev. Stat. 1963, chap. 127, par. 132.6a—1). Jurisdiction on direct appeal lies here pursuant to our allowance of appellants' motion under our Rule 28—1 E, this cause being a matter of extraordinary importance requiring immediate decision here. Ill. Rev. Stat. 1965, chap. 110, par. 101.28—1.

The 74th General Assembly declared the construction of certain building facilities at the site of the Chicago Circle

Campus of the University of Illinois to be in the public interest in accordance with the Illinois Building Authority Act (Ill. Rev. Stat. 1963, chap. 127, par. 213.1, *et seq.*). Subsequently, appellant Board of Trustees of the University of Illinois advertised for bids on projects including those in question here, the advertisements indicating the University might subsequently assign any or all bids to the Authority for award of contracts. Separate bids involving the four "specialty" subdivisions of the work were received and later rejected as excessive since the total was 51.2 per cent above estimated costs.

Thereafter, the Board of Trustees did not re-advertise for bids as provided by the Purchasing Act (Ill. Rev. Stat. 1963, chap. 127, par. 132.4), but apparently agreed that the Illinois Building Authority should advertise for bids on the projects in question. The Authority, in soliciting bids, did not comply with the procedures set forth in 6a—1 of the Purchasing Act, but employed instead the "single bid system" under which general contractors were allowed to bid for all work on a particular project including plumbing, heating, air conditioning, and electrical wiring—the four mechanical subdivisions which, under section 6a—1 of the Purchasing Act, must be the bases for separate bids.

Suit for declaratory judgment as to the applicability of the Purchasing Act to bids solicited by the Illinois Building Authority was thereupon instituted by plaintiffs, appellees here, who are certain trade associations of Chicago and Cook County, and various specialty contractors.

The trial court, agreeing with plaintiffs, held that the bids solicited by the Illinois Building Authority must comply with the provisions of the Purchasing Act, that the "single bid system" employed by the Authority did not so comply, that neither the Building Authority nor the University Board of Trustees could properly advertise for bids on the projects in question except as provided in section 6a—1

of the Illinois Purchasing Act, and that the advertisement for bids under the "single bid system" was therefore illegal and void.

The Illinois Building Authority, created by the General Assembly in 1961, is a body politic and corporate of the State consisting of seven members appointed by the Governor, by and with the advice and consent of the Senate. Its functions are to build and otherwise provide for public institutional facilities throughout the State, to continuously study the need for such facilities, and to make recommendations to the General Assembly concerning the providing of such facilities. (Ill. Rev. Stat. 1963, chap. 127, par. 213.1 *et seq.*). Since its creation, the Building Authority has rapidly assumed an important position in providing public institutional facilities, accounting in the 1965-67 biennium for more than half of such building projects and having authorization for the expenditure of more than $206,500,000 for building projects.

The issue here is narrow: Is the Illinois Building Authority, in soliciting bids for this building project, subject to the provisions of the Illinois Purchasing Act, particularly section 6a—1 thereof? Whether the authority should be so subject is a policy decision for legislative determination. It is our duty to examine existing legislation to ascertain the legislative intent.

Section 2 of the Illinois Purchasing Act declares the public policy of the State of Illinois to be "that the principle of competitive bidding and economical procurement practices shall be applicable to all purchases and contracts for which state funds are expended." (Ill. Rev. Stat. 1963, chap. 127, par. 132.2; see *Inskip* v. *Board of Trustees of the University of Illinois,* 26 Ill.2d 501, 509.) Other sections provide that all "State agencies" must comply with the prescribed bidding procedures prior to awarding contracts.

Section 3 provides in pertinent part: "a. 'State agency'

means and includes each officer, department, board, commission, institution, body politic and corporate of the State and any other person expending or encumbering state funds by virtue of an annual or biennial appropriation from the General Assembly."

It is conceded by appellants that the Authority is a "body politic and corporate of the State" but they argue that the clause "expending or encumbering state funds by virtue of an annual or biennial appropriation from the General Assembly" must be deemed to modify all of the antecedents enumerated in the definition set forth above. Therefore, it is urged, since the Authority here is not "expending or encumbering State funds by virtue of an annual or biennial appropriation from the General Assembly" but rather does its financing through the issuance and sale of revenue bonds, it does not come within the ambit of the definition of "State agency" and is not required to follow the prescribed bidding procedures set forth in the Purchasing Act. Appellees maintain that it is the general canon of statutory construction that relative and qualifying words and phrases both grammatically and legally refer only to the immediately preceding antecedent unless a contrary intent clearly appears. (*Stevens* v. *Illinois Central Railroad Co.* 306 Ill. 370; *Franciscan Sisters* v. *County of Vermilion,* 304 Ill. App. 243; I. L. P., Statutes, par. 120.) Under this rule the clause "expending or encumbering state funds by virtue of an annual or biennial appropriation from the General Assembly" would refer only to the antecedent "any other person" and not to each of the other entities mentioned in the definition. Since the Building Authority admittedly is a "body politic and corporate of the State" it would be included within the definition of "State agency" set forth in the section.

In our judgment, recourse to the "last antecedent rule" is uncalled for, since it is the intention of the lawmakers, as embodied in the statute, which governs. The cardinal rule of statutory construction, to which all other canons and

rules are subordinate, is to ascertain and give effect to the true intent and meaning of the legislature in enacting the law. *Board of Education* v. *Brittin*, 11 Ill.2d 411, 414; 34 I. L. P., Statutes, par. 113 at pages 92-93; Sutherland, Statutory Construction, 3d ed. vol. II, par. 4501.

Relevant here in interpreting the definition in question is the case of *Inskip* v. *Board of Trustees of the University of Illinois*, 26 Ill.2d 501, where in discussing the provisions of the Purchasing Act we said at pages 504-05 : "The sole defendant is the University of Illinois * * * which we have heretofore held is a corporation, separate and distinct from the State and no part of the State or State government, (*People ex rel. Board of Trustees of the University of Illinois* v. *Barrett*, 382 Ill. 321, 342), but which is included within the definition of a 'State agency' in the legislation here pertinent, since it expends or encumbers State funds 'by virtue of an annual or biennial appropriation from the General Assembly.' " While that case did not involve the question here present, we believe the language quoted correctly interpreted the definition in question. We think it clear that the General Assembly sought only to include within this definition those State agencies which expend or encumber State funds by virtue of annual or biennial appropriations. To hold otherwise would require subjection to the provisions of the Purchasing Act of all of the other entities mentioned in the definition whether the funds expended by them are State funds or otherwise. Such interpretation was clearly not contemplated, for the declaration of public policy set forth in section 2 of the Purchasing Act, referred to earlier, seeks only to apply the principle of competitive bidding and economical procurement practices as embodied in the act to those contracts and purchases for which State funds are expended. We therefore hold that the phrase "expending or encumbering State funds by virtue of an annual or biennial appropriation from the General Assembly" relates to and modifies each of the antecedents

theretofore expressed within the definition of "State agency".

Remaining for consideration is the question whether the Authority, in connection with these projects, is in fact expending or encumbering State funds by virtue of annual or biennial legislative appropriations. We believe not, since the financing of the construction involved here is wholly derived from the sale of revenue bonds by the Building Authority. (Ill. Rev. Stat. 1963, chap. 127, par. 213.5(d)). We have heretofore held that such bonds do not create a debt of the State, that the Building Authority Act is self-contained and complete in itself, that the Authority is a corporate entity separate and apart from the State, and that the act is thus not unconstitutional as allowing the creation of a debt of the State in excess of $250,000 without a referendum. (*Berger* v. *Howlett,* 25 Ill.2d 128). We believe the funds with which we are here concerned, *i.e.,* the funds derived from public bond issues, may not fairly be said to be "State funds" within the purview of the Illinois Purchasing Act nor do they become such because held in trust by the State Treasurer for the use of the Authority. The statutory exemption of the property of the Authority from taxation (Ill. Rev. Stat. 1963, chap. 127, par. 213.13) does not require a holding that the funds derived from public bond issues are State funds for the purposes of the Purchasing Act, for what are State funds for purposes of taxation is a question entirely apart from that posed here. See *People ex rel. Trustees of U. of I.* v. *Barrett,* 382 Ill. 321, 340-43 (property of the University of Illinois held in fact property of the State) ; *People ex rel. Olmsted* v. *University of Illinois,* 328 Ill. 377 (scholarship fund held by University of Illinois held not exempt from taxation).

Appellees argue, however, that this whole scheme of fiancing depends for its existence upon appropriations from the General Assembly, since the funds to retire the bonds are ultimately obtained in installments derived from legis-

lative appropriations to the lessee State agencies for rentals to be paid by the occupying lessee agency (here, the University of Illinois) to the Authority. (Ill. Rev. Stat. 1963, chap. 127, par. 213.5(c)). We agree that the probability of forthcoming legislative appropriations to the Authority's lessees constitutes the dominant factor relied upon by the public when purchasing the Authority's bonds, but it is clear that neither the bondholders nor the Authority can compel the General Assembly to appropriate such rental funds and it therefore cannot be said that the Authority is expending or encumbering such forthcoming appropriations. Nor when the appropriations reach the lessee can the Authority "encumber" the funds. The appropriations are to the lessee and their subsequent payment to the Authority is wholly attributable to the lessee's decision to lease, and not to any unilateral action of the Authority. The funds with which we are concerned here are for construction costs and derived from the issuance of bonds by a corporate entity which we have previously held to be entirely apart and separate from the State.

Also relevant to interpretation of the scope of the definition of "expend" and "encumber" as used by the legislature in the definition of "State agency" is appellant's argument that, if the receipt of State funds appropriated to a State agency and by it paid to a third party constitutes the expenditure or encumbrance of State funds by the third party, the provisions of the Purchasing Act may well be extended, at least arguably, to a point never contemplated nor intended by the General Assembly. It seems to us clear that the legislative intent was not to subject such third party to the Purchasing Act requirements in that party's use of the funds so derived, but to apply the Purchasing Act to the use of the appropriated funds by those to whom the appropriation is made.

We therefore hold that the Building Authority is not a "State agency" as defined by the Purchasing Act in connec-

tion with the construction of the facilities in question here, since it is not "expending or encumbering State funds by virtue of annual or biennial appropriations from the General Assembly."

The judgment of the circuit court of Cook County is accordingly reversed.

*Judgment reversed.*