684 P.2d 904

**L.G. LEFLER, INC., dba Defco Construction Company, Plaintiff/Appellee,**

v.

**TUCSON AIRPORT AUTHORITY, INC., an Arizona corporation, Defendant/Appellant.**

**No. 2 CA–CIV 4917.**

Court of Appeals of Arizona, Division 2.

April 19, 1984.

Review Denied July 17, 1984.

Kaplan, Jacobowitz, Hendricks & Bosse, P.C. by Henry Jacobowitz, Phoenix, for plaintiff/appellee.

Bilby, Shoenhair, Warnock & Dolph, P.C. by W.E. Dolph and Marc G. Simon, Tucson, for defendant/appellant.

OPINION

BIRDSALL, Chief Judge.

The single narrow question in this appeal is whether the Tucson Airport Authority (TAA) is required to accept substituted security in lieu of retentions from a contractor constructing an improvement at the Tucson International Airport. The trial court found in favor of the contractor, L.G. Lefler, Inc. (Lefler). We affirm.

The case was submitted to the trial court on stipulated facts including all of the following. Lefler is an Arizona corporation engaged in the construction business in Pima County. TAA is a nonprofit corporation organized and existing under A.R.S. §§ 10–451 to 10–458 (the Arizona nonprofit corporation law), and the statutes which were replaced by such sections. TAA has entered into a lease with the City of Tucson which brings it within the purview of A.R.S. § 2–312.

On or about June 4, 1982, the parties entered into a written construction contract which provides for the construction of certain improvements on Tucson International Airport for an agreed contract sum of $21,-189,000. The contract contains a provision

permitting TAA to retain amounts equal to ten percent of the amounts which otherwise would be payable because of the progress of the job under contract. The contract is to be entirely financed and funded out of proceeds from bonds sold by TAA and underwritten by the scheduled airlines utilizing the airport.

TAA has no taxing powers. The interest on the bonds is tax-free. Neither the officers, directors, members nor employed staff of TAA are elected by the electorate of the City of Tucson, Pima County or the State of Arizona. On or about July 23, 1982, Lefler notified TAA that it was exercising its right to substitute securities, bank certificates of deposit, in lieu of retentions as provided in A.R.S. § 34–221(A)(3). On or about August 24, 1982, TAA replied advising that it was not an agent within the meaning of A.R.S. § 34–221 and denying Lefler the right to substitute. TAA also added that its position was consistent with the bidding documents.

Neither the state nor the city nor Pima County are signatories to the construction contract. TAA does from time to time receive aviation grants through the Federal Aviation Administration to be used on special projects in connection with the airport, but none of said funds have been or will be available to repay the bonds or to pay for any of the work or materials covered by the contract. TAA also receives, from time to time, aviation grants from Arizona to be used on special projects in connection with another airfield, but none of said funds have been or will be available to repay the bonds or to pay for any of the work or materials covered by the contract.

The trial court was also given copies of relevant portions of the construction contract, the lease, TAA's articles of incorporation and bylaws, bid invitation documents, a sample bond, the use agreement between the airlines and TAA and the bond resolution and prospectus.

Chapter 3 of Title 2, A.R.S. § 2–301, et seq., contains provisions for the ownership and operation of an airport by a municipality or county, including construction and leasing. The lease between the city and TAA, by virtue of which the airport is managed for the benefit of the public, is authorized by A.R.S. § 2–311. The next section, A.R.S. § 2–312(A) provides:

"Every nonprofit corporation which is a lessee as provided in § 2–311 is declared to be a validly organized and existing body politic and corporate exercising its powers for the benefit of the people, for the improvement of their health and welfare and for the increase of their traffic and prosperity and is declared to be engaged in a public purpose essential to transportation and communication, and performing an essential governmental function *as an agency* or instrumentality *of the city and state.*" (emphasis supplied)

Subparagraphs B and C give the nonprofit corporation authority to issue bonds, exempt it from property taxation and give it police and other governmental powers as may be provided in the lease. Our supreme court has described TAA in *Hertz Driv-Ur-Self System v. Tucson Airport Authority,* 81 Ariz. 80, 299 P.2d 1071 (1956):

"... It is true that in its outward forms the corporate defendant is not distinguishable from other private corporations, but when it is considered that the sole reason for its existence is to advance the public interest in the operation, maintenance and improvement of the city-owned airport and landing field; that its revenues are all public money and devoted to the use of its landlord the city; and considering also the terms of the cited statute from which in so large a part its powers are derived it would seem strange if the courts would not cut through its outward forms and see it in its true nature as a public arm of the state and its officers performing public rather than private functions." Id. at 83, 299 P.2d 1071.

A.R.S. § 34–221(A), a part of our public works statutes, requires certain terms in contracts for public improvements.

"The agent shall enter into a contract with the lowest responsible bidder whose proposal is satisfactory, the terms of which shall include the following items:

1. A surety company bond or bonds as required under the provisions of this article.

2. The owner by mutual agreement may make progress payments as provided for in this paragraph. Payment to the contractor on the basis of a duly certified and approved estimate of the work performed during the preceding calendar month under such contract may include payment for material and equipment but to insure the proper performance of such contract, the owner shall retain ten per cent of the amount of each estimate until final completion and acceptance of all material, equipment and work covered by the contract. Upon completion and acceptance of each separate building, public work, or other division of the contract on which the price is stated separately in the contract, except as qualified in paragraph 3 of this subsection, payment may be made in full, including retained percentages thereon, less authorized deductions. In preparing estimates, the material and equipment delivered on the site to be incorporated in the job may be taken into consideration in determining the estimated value by the architect or engineer.

3. Ten per cent of all estimates shall be retained by the agent as a guarantee for complete performance of the contract, to be paid to the contractor within sixty days after completion or filing notice of completion of the contract. *In lieu of the retention provided in this paragraph and paragraph 2 of this subsection, the agent shall, at the option of the contractor, accept as a substitute an assignment of time certificates of deposit of banks* licensed by this state, securities of or guaranteed by the United States of America, securities of this state, securities of counties, municipalities and school districts within this state or shares of savings and loan institutions authorized to transact business in this state, *in an amount equal to ten per cent of all estimates which shall be retained by the agent as a guarantee for complete performance of the contract.* In the event the agent accepts substitute security as described in this paragraph for the ten per cent retention, the contractor shall be entitled to all interest or income earned by such security and all such security in lieu of retention shall be returned to the contractor by the agent within sixty days after final completion and acceptance of all material, equipment and work covered by the contract if the contractor has furnished the agent satisfactory receipts for all labor and material billed and waivers of liens from any and all persons holding claims against the work. In no event shall the agent accept a time certificate of deposit of a bank or shares of a savings and loan institution in lieu of the retention specified unless accompanied by a signed and acknowledged waiver of the bank or savings and loan association of any right or power to setoff against either the agent or the contractor in relationship to the certificates or shares assigned.

4. In any instance where the agent has accepted substitute security as provided in paragraph 3 of this subsection, any subcontractor undertaking to perform any part of such public work shall be entitled to provide substitute security to the contractor upon terms and conditions similar to those described in paragraph 3, and such security shall be in lieu of any retention under the subcontract." (emphasis supplied)

It is the provision for substitution of securities which gives rise to this dispute.

This is the same provision involved in *Central Arizona Water & Ditching Company v. The City of Tempe,* 140 Ariz. 119, 680 P.2d 829 (1984). In that opinion Division One of this court held that a contract for the construction of a water treatment plant to be utilized by the city of Tempe was subject to the provisions of our public works law. In *CAWDCO* the city used a private, non-profit corporation as the "nom-

inal" owner of the improvement to contract for the construction. The corporation had no other purpose other than to assist the city in the building of city improvements. All assets of the corporation vest in the city upon dissolution without payment of any consideration. As in the instant case, bonds are sold to cover the cost of construction. The bonds are retired under a buy-back agreement with the city. The end result in *CAWDCO* is that the city owns the improvement and the bonds are paid, the result in the instant case.

Agent is defined in A.R.S. § 34–101 to mean:

"In this title, unless the context otherwise requires, 'agent' means the state or any county, city or town, or officer, board or commission thereof, and irrigation, power, electrical, drainage and flood control districts, tax levying public improvement districts, and county or city improvement districts."

The appellant, TAA, contends it is not an agent within the meaning of this latter statute. It contends that it is not the state, county, city or town nor is it a board, commission or officer thereof. It also contends that A.R.S. § 34–101 was not intended to encompass a nonprofit corporation similar to it expending money raised by the issuance of bonds underwritten by private airlines. In *CAWDCO* a similar argument is rejected, the court holding that the public works statute is applicable when a governmental agency (the city of Tempe) used a private corporation to finance the project. *See also Secrist v. Diedrich*, 6 Ariz.App. 102, 430 P.2d 448 (1967).

The appellant argues, however, that *Hertz, supra*, is authority for its position. It contends that our supreme court refused to hold in *Hertz* that TAA was governed by the Tucson City Charter simply because it may act as an agency of the city. The act giving rise to the *Hertz* litigation was the award of an exclusive automobile rental franchise to AAA Auto Rental of Tucson, Inc. (Avis). Hertz sought by its action in mandamus to compel the cancellation of that contract and to have the franchise awarded to it. TAA did not follow a bidding procedure in selecting Avis over Hertz. It informally let it be known that the franchise would be available and received sealed offers. Both Hertz and Avis submitted offers and, after negotiation, TAA contracted with Avis. Hertz contended that TAA should have followed a city charter provision requiring that the lease of any public utility owned or controlled by the city, or lands owned by the city, should be only to the highest bidder. The supreme court held this charter provision inapplicable since the Avis contract was not a lease, but rather a contract for services. The court did not hold, as the appellant contends, that TAA was not governed by the Tucson charter.

The appellant next contends that a legislative intent not to consider TAA or similar entities to be synonymous with the state, county, city or town is shown by the provisions of A.R.S. § 2–314, which provides:

"A. The governing body of any public airport operating pursuant to the provisions of §§ 2–311 and 2–312 may appoint one or more persons to be designated by such airport as airport policemen to aid and supplement the law enforcement agencies of this state in the protection of persons and property. While engaged in the conduct of this employment each such airport policeman possesses and shall exercise all law enforcement powers of peace officers in this state.

B. Any person appointed as an airport policeman under the provisions of subsection A of this section shall first have the minimum qualifications established by the Arizona law enforcement officer advisory council for peace officers and police officers pursuant to § 41–1822. The airport shall file the name of each such airport policeman on the date of his appointment with the director of the department of public safety. If the appointee meets the minimum qualifications established by the Arizona law enforcement officer advisory council, the director of the department of public safety shall issue him a certificate of authori-

ty to act as a peace officer, and may thereafter revoke such certificate for good cause shown.

C. The governing body of each airport appointing any airport police shall be liable for any and all acts of such airport police within the scope of their employment. Neither the state nor any other political subdivision shall be liable for any act or failure to act by any such airport policeman, unless the state or a political subdivision is the governing body of such airport."

The appellant contends that this provision in subsection C, whereby the state or political subdivision is not liable for conduct of airport police appointed by an entity like TAA, demonstrates that TAA is not an agency of a governmental body. To the contrary we believe this provision is included because the legislature recognized that otherwise the officers appointed by TAA might be considered employees of the governmental body. We agree with the appellees that this is also a distinction without a real difference. Tucson Airport is owned by the city and all its revenue inures to the city. Thus, there may be no substantive difference between whether TAA or the city is liable.

■ It is the appellee's position that TAA is an agent as that term is used in the public works statutes because A.R.S. § 2–312(A) says it is a "body politic ... performing an essential governmental function as an agency or instrumentality of the city and state." The appellant contends, however, that if the Arizona Legislature had intended that the public works statutes should apply to any entity which may technically be defined as an entity performing functions as a governmental instrumentality or "agency" of the state, the legislature would presumably have specifically so stated in the statute. On the contrary, however, the appellant argues, the legislature amended A.R.S. § 34–101 in 1969 for the specific purpose of omitting from the definition of "agent" the phrase "or other governmental agency or person." Former A.R.S. § 34–101 (Laws 1952, Ch. 114) provided, in part:

"9–101. POWER OF EMPLOYMENT. (a) When by any law authority is given to any state or county officer, board, commission or other governmental agency, or person, each hereinafter designated agent, to construct a state, county or other building or structure or additions to or alterations of existing buildings or structures, an architect or engineer, or both, as the type of construction may warrant, shall be employed by such agent if the work is deemed of a nature warranting such employment."

The appellant contends this amendment is significant because it clarifies that even if TAA is considered "a governmental agency" the scope of A.R.S. § 34–101 does not extend to such agencies. We agree with the appellee's response to this argument that the 1969 amendment was almost a complete rewrite of the former section, not just the elimination of one phrase. As the section was rewritten, the phrase "or other governmental agency" became superfluous because the list of principals was so considerably expanded that its agents and instrumentalities were all covered as well. TAA is actually the city acting through an agency. *See Paradise Valley Water Company v. Hart,* 96 Ariz. 361, 395 P.2d 716 (1964).

The appellant next contends that since TAA is not an officer of the state, county or city, and is obviously not per se the state, county or city, it is not included in A.R.S. § 34–101 unless it is a board or commission of the state, county or city. It relies upon the definition of board or commission found in A.R.S. § 38–101:

"In this title, unless the context otherwise requires:

1. 'Office', 'board' or 'commission' means any office, board or commission of the state, or any political subdivision thereof, the salary or compensation of the incumbent or members of which is paid from a fund raised by taxation or by public revenue.

2. 'Public institution' means any institution maintained and paid for from a

fund raised by taxation or by public revenue.

3. 'Officer' or 'public officer' means the incumbent of any office, member of any board or commission, or his deputy or assistant exercising the powers and duties of the officer, other than clerks or mere employees of the officer."

Because none of the officers of TAA is salaried, it argues, TAA is not a board or commission. Title 38, to which this definition pertains is Public Officers and Employees. The appellant also cites A.R.S. § 41–762 which provides that an employee for purposes of Articles 5 and 6 of Title 41, State Government, is one holding a position in state service. A.R.S. § 41–762(2) defines state service as meaning all offices and positions of employment in state government. Articles 5 and 6 of Title 41 cover the subjects of the personnel administration division and personnel board of the Department of Administration of the state. We find these arguments irrelevant. Regardless of whether TAA's officers and directors are public officers under Title 38 or employees under Title 41, they do have public duties and responsibilities. A.R.S. § 2–312. They perform public functions, *Hertz, supra.*

Certainly one of TAA's most important public functions is the construction of improvements to the airport which, pursuant to its lease agreement and A.R.S. § 2–311, vest in the city of Tucson. This public function is the very subject of this dispute and is, we believe, subject to the provisions of the public works law, A.R.S. Title 34. As our supreme court said in *Hertz*, "The non-profit corporation in every way acts as the arm of the city in the operation of the Airport." 81 Ariz. at 81, 299 P.2d 1071. We find the case cited by the appellant, *Kentucky Region Eight v. Commonwealth of Kentucky*, 507 S.W.2d 489 (App. 1974), inapposite since it concerned the question whether employees of a non-profit corporation administering mental health programs were under the state retirement program. In the instant case we are not concerned with the status of the employees of TAA but rather we are concerned with

whether the public work statutes govern the construction of this improvement at the city-owned airport. We believe they do.

Finally the appellant argues that a reading of A.R.S. § 2–303 indicates that the Arizona Legislature did not intend that a non-profit corporation operating an airport facility should be subject to Title 34.

A.R.S. § 2–303(D) provides:

"D. Contracts for acquisition, construction, enlargement, improvement, maintenance, equipment or operation of airports or other air navigation facilities, made by the state, county, city or town itself, or through the department of transportation shall be made pursuant to the laws governing the making of like contracts, but where the acquisition, construction, improvement, enlargement, maintenance, equipment or operation is financed wholly or partly with federal monies, the contracts may be let in the manner prescribed by the federal authorities, acting under the law of the United States, and rules or regulations thereunder, notwithstanding state law to the contrary."

Since a non-profit corporation operating an airport pursuant to A.R.S. § 2–311 and § 2–312 is not listed, the appellant argues this shows a legislative intent to exclude it. We reject this argument. A.R.S. § 2–303 concerns the acceptance of federal or other aid by the state or municipalities. This is the obvious reason for subsection D permitting federal law to control a contract where the improvement is financed by federal monies.

We have additionally considered the opinion of the Illinois Supreme Court in *Electrical Contractors Association of the City of Chicago v. Illinois Building Authority*, 33 Ill.2d 587, 213 N.E.2d 761, 762 (1966), cited by the appellant. We find the decision inapposite since it turns on statutory language requiring that before the Illinois Building Authority would be included in the definition of agency for the purpose of requiring compliance with certain bidding procedures, it had to be "expending ...

state funds by virtue of an ... appropriation from the General Assembly." 213 N.E.2d at 763.

We are further persuaded that the trial court should be affirmed by the opinion of our supreme court in *School District Number One of Pima County v. Hastings*, 106 Ariz. 175, 472 P.2d 44 (1970). There the court held that the compensation to which an architect employed by the school district was entitled was controlled by Title 34 and not the conflicting terms of the contract. The court arrived at this result because the fees which could be paid by a public agency, the school district, were fixed by A.R.S. § 34–104. Thus the school district was impliedly held to be an "agent" under A.R.S. § 34–101.

In the construction of this improvement at the Tucson Airport, TAA was spending public funds for a public purpose, *CAWDCO, supra*. And see *City of Phoenix v. Superior Court*, 109 Ariz. 533, 514 P.2d 454 (1973).

█ The city is bound by the public works statutes. TAA as an agent of the city is likewise bound.

Affirmed.

HATHAWAY and HOWARD, JJ., concur.