EVELYN LOCK, APPELLANT, V. CITY OF IMPERIAL, NEBRASKA, A CORPORATION, ET AL., APPELLEES.

155 N. W. 2d 924

Filed January 26, 1968. No. 36640.

Kier, Cobb & Luedtke, for appellant.

Luebs, Tracy & Huebner, Curtis & Curtis, and McGinley, Lane, Mueller & Shanahan, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

McCOWN, J.

This is an action for personal injuries sustained in a plane crash after take-off at the airport near Imperial, Nebraska, on May 28, 1965. The plaintiff was Evelyn Lock, and her husband was the pilot. The only defendants were the City of Imperial, Nebraska, a corporation, and Glenn Packard, individually, and as manager and operator of the airport. The defendant City of Imperial, by answer and affidavit, established that on April 11, 1960, under the authorization of the Cities Airport Authorities Act, Chapter 3, article 5, R. R. S. 1943, the city created the Airport Authority of the City of Imperial. Since April 11, 1960, the airport authority has had sole and exclusive jurisdiction and authority over the airport and its operation and maintenance. The motion for summary judgment of the City of Imperial was sustained and the plaintiff's petition dismissed as to the City of Imperial.

The basic issue involved is whether the airport authority or the City of Imperial was the proper party defendant. There is no issue of governmental immunity from tort liability involved. The operation of an airport is a proprietary function and subject to tort liability if the city itself were operating it. Brasier v. Cribbett, 166 Neb. 145, 88 N. W. 2d 235. An airport authority by statute is clearly subject to tort liability. See § 3-512, R. R. S. 1943. The Cities Airport Authorities Act has been held constitutional. Obitz v. Airport Authority of the City of Red Cloud, 181 Neb. 410, 149 N. W. 2d 105.

It therefore becomes necessary to examine the enabling act to determine whether or not an airport authority is an agency or mere instrumentality of the city, or a separate public corporation with ordinary corporate insulation from its creator.

Under the Cities Airport Authorities Act, Chapter 3,

article 5, R. R. S. 1943, an airport authority is designated as a body politic and corporate. It is managed and controlled by a board which has full and exclusive jurisdiction and control over all facilities owned or thereafter acquired by the city for the purpose of aviation operation, air navigation, and air safety operation. The board is designated "a body corporate and politic, constituting a public corporation and an agency of the city for which such board is established." Initially board members are appointed by the mayor with the approval of the city council and upon the expiration of the initial terms, members of the board are nominated and elected in the manner provided by law for the officers of the city. Extensive powers are granted in the charter set out in the statute. An airport authority has power to sue and be sued, to have a seal and alter the same at pleasure, and to make bylaws for the management and regulation of its affairs. It has authority to issue bonds and to levy taxes. It has the power to contract with the creating city or with any other political subdivision of the state. It has power to appoint officers, agents, and employees and fix their compensation. Upon the authority ceasing to exist, all its remaining rights and properties pass to and vest in the city. Any city creating an authority is required to transfer to the authority any existing airport or any other property of the city for use in connection with it, including real and personal property owned or leased by the city and used or useful in connection therewith. Naked title to real property so conveyed remains in the city, but the authority has the use and occupancy thereof for so long as its corporate existence shall continue. While the act itself makes no specific reference to the method of establishing a corporate name, the resolution of the city council transferring the property of the city to the authority designates the transfer and conveyance to the "Airport Authority of the City of Imperial."

The plaintiff's position is that although an airport au-

thority is designated as a body politic and corporate constituting a public corporation, it is also specifically designated as "an agency of the city for which such board is established." It is argued that because of incidents of control, the airport authority is merely an agent of the city in the same sense as a municipal department, commission, or board. In essence, the plaintiff's position is that the airport authority is not merely an agency of the city, but the controlled agent of the city to the extent that the corporate veil and separate entity may be disregarded entirely as though the authority were simply the alter ego of the city.

There can be no real question that an airport authority, duly created under the Cities Airport Authorities Act, has all the basic characteristics and attributes of any corporation. "The distinguishing characteristics of a corporation are that it is an artificial person, a legal entity, capable of acting through its corporate officers and agents, of suing, being sued, of taking and holding property, and of contracting in its own name, and of continuing to exist independent of individuals who compose it." 1 Fletcher (Perm. Ed.), Cyclopedia Corporations, § 5, p. 22.

In virtually all respects, an airport authority is a municipal corporation in the strict sense of the term. See, 1 McQuillan (3d Ed.), Municipal Corporations, § 2.07, p. 451. But whether it be called a municipal corporation or a quasi-municipal corporation is immaterial. It is a public corporation with all the basic attributes of a corporation, and it is a separate and independent corporate entity.

"In no particular is the distinction between the corporation and its members more marked and important than in suing and being sued. * * * if the corporation sues or is sued instead of the member, or vice versa, the judgment will afford no decision of the intended cause of action. Judgment in personam for or against the wrong person amounts to little or nothing." 1 Fletcher

(Perm. Ed.), Cyclopedia Corporations, § 36, p. 150.

The problem of whether the Legislature intended the normal corporate attributes and consequent limited liability of the creator is at least partially answered in section 3-509, R. R. S. 1943: "The bonds, notes, and other obligations of an authority shall not be a debt of the State of Nebraska or of the city in which such authority is established, and neither the state nor the city shall be liable thereon, nor shall such bonds be payable out of any funds other than funds of the authority issuing same."

Whether "other obligations" of an authority, taken in context, were specifically intended to include judgments for torts or not is not decisive here. From an overall examination of the act, it seems evident that the Legislature did intend the normal corporate insulation of the creator from liabilities of the authority, including torts.

Antieau's Local Government Law, V. 3, Municipal Corporation Law, § 28.05, p. 526, states: "The weight of authority clearly holds that obligations of a supplementary public corporation are not obligations of the parent municipal corporation within the meaning of debt limitations."

There have been cases holding that a separate public corporation, for some purposes, may be an agency of the municipal corporation or other political subdivision creating it. This type of case has ordinarily involved an issue of whether the supplementary public corporation was sufficiently a governmental agency of the parent municipal corporation or political subdivision to justify the appropriation or use of public funds of the parent for the supplementary corporation. For example, see, Greensboro-High Point Airport Authority v. Johnson, 226 N. C. 1, 36 S. E. 2d 803. This is the sense in which we believe the Legislature intended the words "an agency of the city for which such board is established." In no way does the act indicate any intention to disregard the corporate entity of an airport authority nor to constitute that supplementary public corporation an agent

of the city for purposes of tort liability attribution.

Antieau's Local Government Law, V. 3A, Independent Local Government Entities, § 30E.09, states: "Even though brought into existence by municipal corporations and counties, airport authorities are independent corporate entities, 'rather than mere instrumentalities of the municipalities involved.' "

The basic principles involved here were enunciated by Roscoe Pound in 1902, long before the era of extensive use of supplementary public corporations. This court held that a municipal corporation was not liable for the torts of an independent board constituted by statute for the inspection of buildings. No separate public corporate entity was involved, but the issues of independence and agency were. Roscoe Pound, speaking for this court said: "The execution of laws and ordinances as to the erection, repair and removal of buildings was given expressly, not to the city, but to this board. The board was not under the control of the city government, but exercised its own discretion. * * * As the board was the creature of the statute, and exercised powers derived from the state, not from the city, we do not see how it can be said to represent the municipality so as to make the latter liable for its wrongful acts. The individual members are the persons to proceed against, not the city." Murray v. City of Omaha, 66 Neb. 279, 92 N. W. 299, 103 Am. S. R. 702. Where an independent public *corporate* entity rather than mere members of a board constituted by statute is involved, the rationale of the rule is even more compelling.

We hold that an airport authority, duly created by a city under the Cities Airport Authorities Act, is a supplementary, separate, and independent public corporation, and the parent municipal corporation is not liable for the torts of the authority.

The action of the district court in sustaining the motion for summary judgment was correct and is affirmed.

AFFIRMED.