IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

DBT YUMA, L.L.C., an Arizona limited liability company; DBRT YUMA
FBO, LLC, an Arizona limited liability company; DBRT YUMA
HANGARS, LLC, an Arizona limited liability company; DBRT YUMA
MAINTENANCE, LLC, an Arizona limited liability company,
*Plaintiffs/Appellants*,

*v.*

YUMA COUNTY AIRPORT AUTHORITY, a body politic and corporate
pursuant to A.R.S. § 28-8424;[1]
YUMA COUNTY, a political subdivision of the State of Arizona,
*Defendants/Appellees*.

No. 1 CA-CV 13-0645
FILED 12-16-2014

Appeal from the Superior Court in Yuma County
No.  S1400CV201001309
The Honorable John Neff Nelson, Presiding Judge

**AFFIRMED**

---

[1]     The original caption erroneously referred to the Yuma County
Airport Authority as "a political subdivision of the County of Yuma
pursuant to A.R.S. § 28-8423."   *See* A.R.S. § 28-8461(14) ("'Political
subdivision' means a city, town or county and includes a school district.").
We therefore, *sua sponte,* amend the caption to reflect Yuma County Airport
Authority's status as a body politic and corporate, and order the use of this
caption for all further proceedings on appeal.

COUNSEL

Baird, Williams & Greer, LLP, Phoenix
By Daryl M. Williams, Craig M. LaChance
*Co-Counsel for Plaintiffs/Appellants*

Torok Law Office, P.L.L.C.,Yuma
By Gregory T. Torok
*Co-Counsel for Plaintiffs/Appellants*

Yuma County Attorney's Office, Yuma
By William J. Kerekes
*Counsel for Defendant/Appellee Yuma County*

Kutak Rock, LLP, Scottsdale
By Paul S. Gerding, Jr., Marc R. Lieberman, Kelley Braden
*Co-Counsel for Defendant/Appellee Yuma County Airport Authority*

Byrne, Benesch & Rice, PC, Yuma
By Wayne C. Benesch, Shawn D. Garner
*Co-Counsel for Defendant/Appellee Yuma County Airport Authority*

---

**OPINION**

Judge Kenton D. Jones delivered the Opinion of the Court, in which Presiding Judge Peter B. Swann and Judge Michael J. Brown joined.

---

**J O N E S**, Judge:

¶1        This appeal requires us to determine whether Yuma County, which leases its airport land to the Yuma County Airport Authority (YCAA), a nonprofit corporation pursuant to Arizona Revised Statutes (A.R.S.) sections 28-8423[2] and -8424, may be held vicariously liable for the actions of that nonprofit lessee.

---

[2]        Absent material revisions after the relevant date, we cite a statute's current version.

¶2         Plaintiffs, all Arizona limited liability companies, brought an action against the Yuma County Airport Authority for breach of contract and various torts.  Plaintiffs later amended their complaint to add Yuma County as a defendant under a theory of vicarious liability.  Yuma County moved for summary judgment, which the trial court granted.  Because A.R.S. § 28-8424 does not impose vicarious liability upon Yuma County for the actions of YCAA, we affirm.

## FACTS[3] AND PROCEDURAL HISTORY

¶3         YCAA was formed as a nonprofit civic corporation in 1965 for the purposes of, *inter alia*, operating and maintaining airports in southern Arizona.  By virtue of a lease agreement signed in 1966, and subsequent amendments thereto (collectively, Lease Agreement), Yuma County leases the land upon which the Yuma International Airport (Airport) is located to YCAA for purposes of operating the Airport.

¶4         Plaintiffs collectively do business as Lux Air.  To conduct their operations, Plaintiffs entered into subleases and license agreements (collectively, Subleases) with YCAA in 2008 and 2009.  Following Lux Air's eviction from the Airport, Plaintiffs filed this action against YCAA and Yuma County.  With respect to the County, Plaintiffs raised a theory of vicarious liability, alleging YCAA was a "political subdivision" and "instrumentality and alter ego" of Yuma County.

¶5         Plaintiffs and Yuma County filed cross-motions for summary judgment on the issue of Yuma County's liability.  Plaintiffs asserted Yuma County created YCAA under A.R.S. § 28-8424, a statute that generally describes, and sets forth the powers and duties of, nonprofit corporate airport operators that lease airport land from counties.  Plaintiffs argued the statute, together with the Lease Agreement's terms, granted YCAA "very little autonomy and greatly restrict[ed] its rights in [A]irport property." According to Plaintiffs, Yuma County "maintain[ed] the right to do whatever it want[ed] to the [A]irport" and, consequently, YCAA "[wa]s really a shell."

---

[3]         "On appeal from a grant of summary judgment, we view all facts and reasonable inferences therefrom in the light most favorable to the party against whom judgment was entered." *Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, 315, ¶ 2, 965 P.2d 47, 49 (App. 1998).

¶6            Yuma County argued that no factual or legal basis existed to support Plaintiffs' contentions it had formed YCAA or exercised any supervision or control over YCAA. Yuma County also asserted it was entitled to summary judgment pursuant to A.R.S. § 28-8424. Specifically, the County argued the statute does not impose vicarious liability upon counties that contract with nonprofit corporations to lease and operate county-owned airports.

¶7            The trial court granted summary judgment in favor of Yuma County. Plaintiffs timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

¶8            We review *de novo* the grant of summary judgment. *Tierra Ranchos Homeowners Ass'n v. Kitchukov*, 216 Ariz. 195, 199, ¶ 15, 165 P.3d 173, 177 (App. 2007). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). A defendant moving for summary judgment "need merely point out by specific reference to the relevant discovery that no evidence exist[s] to support an essential element of the claim." *Orme Sch. v. Reeves,* 166 Ariz. 301, 310, 802 P.2d 1000, 1009 (1990). The burden then shifts to the plaintiff to produce sufficient evidence of a genuine issue of material fact as to one or more essential elements of the claim or defense in order to defeat summary judgment. *Id.*; Ariz. R. Civ. P. 56(c)(3). We "may affirm the trial court's grant of summary judgment if it is correct for any reason." *Chi. Ins. Co. v. Manterola,* 191 Ariz. 344, 346, ¶ 7, 955 P.2d 982, 984 (App. 1998).

## I.    YCAA Was Not an Alter Ego of Yuma County.

¶9            Based upon the claims asserted against Yuma County, Plaintiffs were required to show YCAA was "an alter ego" of Yuma County, which would be demonstrated through evidence of YCAA and Yuma County having "unity of control" and that "observance of [YCAA's] corporate form would sanction a fraud or promote injustice." *Gatecliff v. Great Republic Life Ins. Co.*, 170 Ariz. 34, 37, 821 P.2d 725, 728 (1991) (setting forth elements of alter ego and instrumentality theories of vicarious liability). For vicarious liability to apply, Plaintiffs must show that the unity of control between YCAA and Yuma County was so pronounced that "the individuality or separateness" of the two "had ceased to exist." *Ferrarell v. Robinson*, 11 Ariz. App. 473, 476, 465 P.2d 610, 613 (1970); *see also Gatecliff,*

170 Ariz. at 38, 821 P.2d at 729 ("'When one corporation so dominates and controls another as to make that other a simple instrumentality or adjunct to it, the courts will look beyond the legal fiction of distinct corporate existence, as the interests of justice require.'") (quoting *Walker v. Sw. Mines Dev. Co.*, 52 Ariz. 403, 414-15, 81 P.2d 90, 95 (1938)). The factors to determine "substantially total control" include whether one entity owned stock in the other entity; the two entities shared common officers or directors; one entity financed the other entity or paid the other entity's employees salaries or other expenses; one entity failed to maintain the formalities of corporate existence; the two entities shared similar logos; and the one entity did not know it was a corporate entity separate from the other entity. S*ee Gatecliff*, 170 Ariz. at 37, 821 P.2d at 728.

¶**10**        The record is devoid of any such evidence. Indeed, pursuant to a stipulation between the parties, Plaintiffs agreed that: (1) Yuma County and YCAA have never shared common officers or directors; (2) Yuma County has provided no financing of or for YCAA; (3) Yuma County has paid no salaries to the officers or employees of YCAA; (4) Yuma County has paid none of the ordinary operating expenses of YCAA; (5) YCAA has maintained all legal formalities to continue its corporate existence; (6) the corporate logos of Yuma County and YCAA are dissimilar; and (7) Plaintiffs knew that YCAA maintained a separate corporate existence from Yuma County.[4] Furthermore, when Plaintiffs moved for summary judgment against YCAA before adding Yuma County as a defendant, Plaintiffs admitted: "[YCAA] is an independent public agency that is not really answerable to anyone. [The Airport's director] is answerable to the [YCAA's] board, but the members of the board are not answerable to anyone else."[5]

---

[4]        At oral argument, the parties were asked if a mechanism provided for the replacement of YCAA's corporate officers in the event they were all lost in a single, catastrophic event. While unable to answer the question directly, the parties agreed the Yuma County Board of Supervisors lacked authority to fill those openings.

[5]        Despite Plaintiffs' allegation to the contrary, no evidence of record indicates Yuma County created YCAA. Indeed, the undisputed evidence shows five private individuals did so. Also, although the Lease Agreement requires Yuma County pay to insure the Airport, the uncontroverted evidence established YCAA, alone, undertook that responsibility.

## II. A.R.S. § 28-8424 Does Not Impose Vicarious Liability upon Yuma County.

¶11 Despite this factual record, Plaintiffs argue A.R.S. § 28-8424 imposes vicarious liability on Yuma County for YCAA's alleged breach of the Subleases. We disagree.

¶12 Arizona counties have a variety of means available to construct, maintain, and operate airports. For instance, a county may elect to do so itself with funds raised through taxation. A.R.S. § 28-8418(A), (C). Alternatively, a county may enter into agreements with the State of Arizona, federal agencies, persons, firms, corporations, or other counties for such purposes. A.R.S. §§ 28-8420, -8421. And as relevant here, a county may lease its land "to a nonprofit corporation for airport or air terminal purposes." A.R.S. § 28-8423. These lessees are described in A.R.S. § 28-8424(A), which provides:

> A. A nonprofit corporation that is a lessee as provided in § 28-8423:
>
> 1. Is a validly organized and existing body politic and corporate exercising its powers for the benefit of the people, for the improvement of the people's health and welfare and for the increase of the people's traffic and prosperity.
>
> 2. Is engaged in a public purpose essential to transportation and communication.
>
> 3. Performs an essential governmental function as an agency or instrumentality of the city, town, county or state.
>
> 4. Is exempt from property taxation by this state or an agency of this state.
>
> 5. Possesses and may exercise police powers and other governmental powers on the terms, conditions, limitations, restrictions and agreements provided in the lease agreements.
>
> 6. May issue bonds, incur obligations and pledge its revenues as security for the payment of bonds and obligations for airport and air terminal purposes to the extent provided by the lease agreement as it exists or as it may be

amended, without regard to any statutory limitation of indebtedness of corporations having authorized capital stock.

A.R.S. § 28-8424(A). Plaintiffs rely upon subsection (A)(3) of the statute and argue the phrase "agency or instrumentality" indicates a legislative intent to impose vicarious liability on counties that lease land to nonprofit corporations for purposes of operating airports.

¶13    We review issues of statutory interpretation *de novo*. *State v. Peek*, 219 Ariz. 182, 183, ¶ 6, 195 P.3d 641, 642 (2008). When interpreting a statute, "'our primary goal . . . is to discern and give effect to legislative intent.'" *State v. Leonardo ex rel. Cnty. of Pima*, 226 Ariz. 593, 595, ¶ 7, 250 P.3d 1222, 1224 (App. 2011) (quoting *Norgord v. State ex rel. Berning*, 201 Ariz. 228, 230, ¶ 7, 33 P.3d 1166, 1168 (App. 2001)). Our first step is to look at the language of the statute as it is the "best indicator of that intent." *Mejak v. Granville*, 212 Ariz. 555, 557, ¶ 8, 136 P.3d 874, 876 (2006). If "'the language is clear and unequivocal, it is determinative of the statute's construction.'" *State v. Hansen*, 215 Ariz. 287, 289, ¶ 7, 160 P.3d 166, 168 (2007) (quoting *Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 214 Ariz. 293, 296, ¶ 8, 152 P.3d 490, 493 (2007)). "We must read the statute as a whole and give meaningful operation to all of its provisions." *Higginbottom v. State*, 203 Ariz. 139, 142, ¶ 13, 51 P.3d 972, 975 (App. 2002). Courts do not read into a statute something that is not within the legislature's intent as gleaned from the statute, *City of Phx. v. Donofrio,* 99 Ariz. 130, 133, 407 P.2d 91, 93 (1965), or construe a statute in a manner that will lead to absurd results. *In re Estate of Zaritsky*, 198 Ariz. 599, 603, ¶ 11, 12 P.3d 1203, 1207 (App. 2000).

¶14    Under A.R.S. § 28-8423(A):

> [I]f a . . . county has leased or leases land owned by it to a nonprofit corporation for airport or air terminal purposes pursuant to a lease agreement that provides that title to all buildings, structures and additions made or added to the leased premises by the nonprofit corporation vests in the . . . county in the manner and subject to the restrictions contained in the agreement, the agreement as it exists or as it may be amended, renewed or extended is binding and effective pursuant to its terms.

*Id.* Thus, the legislature clearly intended counties to have the authority to enter into enforceable lease agreements with nonprofit corporations for airport purposes, where, as here, the lease agreement vests title in improvements in the county.

¶15 No reported case has yet considered A.R.S. § 28-8424 with respect to a county's liability when it exercises its leasing authority under A.R.S. § 28-8423.[6] We note, however, that nothing in A.R.S. § 28-8424 expressly imposes vicarious liability upon counties that lease property to nonprofit corporate operators of airports. To the contrary, by characterizing such lessees as "body politic and corporate," the legislature shielded lessor counties from liability; such a limitation on liability is a legitimate purpose of incorporation. *See Dietel v. Day*, 16 Ariz. App. 206, 208, 492 P.2d 455, 457 (1972) (noting "a legitimate purpose of incorporation is to avoid personal liability and if the corporate fiction is too easily ignored and personal liability imposed, then incorporation is discouraged"). The Lease Agreement is consistent with this purpose as it provides that YCAA "shall be responsible for and shall indemnify and hold the County harmless from all claims arising out of or in respect to all leases, permits, licenses, contracts and agreements made from and after the effective date of this lease."

¶16 To construe the phrase "agency or instrumentality" in A.R.S. § 28-8424(A)(3) as imposing vicarious liability on lessor counties that did not create the corporate airport authority lessee, and that have no control over the lessee, would collapse the distinction between a county's operation of its own airport as opposed to that operation occurring through a lease arrangement pursuant to A.R.S. § 28-8423. Such would render the distinctions within the statute meaningless, and likely result in few counties choosing to operate their airports via a lease agreement with nonprofit corporate operators. We therefore hold A.R.S. § 28-8424 does not impose vicarious liability on Yuma County for YCAA's actions.

---

[6] The Arizona case law relied upon by Plaintiffs does not support their position because those cases do not address the issue of vicarious liability imputed to a county or city. *See Hertz Drive-Ur-Self Sys., Inc. v. Tucson Airport Auth.*, 81 Ariz. 80, 299 P.2d 1071 (1956) (considering mandamus action to compel city airport authority's cancellation of car rental franchise based upon alleged improprieties in bidding procedure); *Thompson v. Tucson Airport Auth., Inc.*, 163 Ariz. 173, 173-74, 786 P.2d 1024, 1024-25 (App. 1989) (holding city's airport authority not subject to Administrative Procedure Act because authority was agent of the city); *L.G. Lefler, Inc. v. Tucson Airport Auth.*, 141 Ariz. 23, 684 P.2d 904 (App. 1984) (holding public works statutes governed construction project at city-owned airport operated by a nonprofit corporate lessee of airport property because authority was an agent of the city).

**¶17** Our holding is consistent with at least one court's construction of a similar statute in another state. In *Lock v. City of Imperial*, 155 N.W.2d 924 (Neb. 1968), the Nebraska Supreme Court addressed whether the City of Imperial (City) was a proper defendant in a personal injury suit brought by individuals who were involved in a plane crash after taking off from a nearby airport. *Id.* at 924. In that case, the City had created an airport authority pursuant to Nebraska law for purposes of operating and maintaining the airport. *Id.* The applicable statute provided cities the authority to create airport authorities that are managed and controlled by a board. *Id.* at 925. The statute also characterized such a board as "a body corporate and politic, constituting a public corporation and an agency of the city for which such board is established." *Id.*

**¶18** Similar to Plaintiffs here, the plaintiffs in *Lock* argued the statutory language describing the board as "an agency of the city" should result in liability imputed to the City under an alter ego theory. *Id.* The Nebraska court rejected this argument and concluded the statute indicated the state legislature "intend[ed] the normal corporate insulation of the creator from liabilities of the authority." *Id.* at 926. The court held "that an airport authority, duly created by a city under the Cities Airport Authorities Act, is a supplementary, separate, and independent public corporation, and the parent municipal corporation is not liable for the torts of the authority." *Id.* at 927. Central to the court's holding were statutory provisions (1) granting an airport authority the power to issue bonds and levy taxes; (2) requiring that all rights and properties pass to and vest in a city when the authority ceases to exist; and (3) requiring cities to maintain "naked title" in airport property transferred by a city to an authority. *Id.* at 925.

**¶19** Arizona's statutes pertaining to nonprofit corporate lessees of county land for airport purposes contain provisions similar to those the *Lock* court considered significant. *See* A.R.S. §§ 28-8423, -8424(A)(6). The one meaningful distinction between the applicable Arizona and Nebraska statutes is one that compellingly supports our interpretation of A.R.S. § 28-8424. In Nebraska, cities themselves form the airport authorities that operate city-owned airports; whereas under A.R.S. § 28-8424, Arizona municipalities contract with independently incorporated airport operators.

## CONCLUSION

**¶20** Plaintiffs presented no evidence that Yuma County controlled YCAA, and A.R.S. § 28-8424 does not impose vicarious liability on counties for the activities of airport operators that are nonprofit corporate lessees of

county airport land. Accordingly, the trial court's order granting summary judgment in favor of Yuma County is affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: gsh