NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

MADISON SQUARE DEVELOPMENT PARTNERSHIP OF ARIZONA, a
California limited partnership, *Plaintiff/Appellee*,

*v.*

CHICAGO TITLE INSURANCE COMPANY, a Nebraska corporation,
*Defendant/Appellant*.

No. 1 CA-CV 14-0115

FILED 5-21-2015

Appeal from the Superior Court in Maricopa County
No. CV2010-016594
The Honorable Katherine M. Cooper, Judge

**REVERSED AND REMANDED**

COUNSEL

Mandel Young PLC, Phoenix
By Taylor C. Young, Robert A. Mandel, Julie Barton Linaman
*Counsel for Plaintiff/Appellee*

Fidelity National Law Group, Phoenix
By Jamey A. Thompson
*Counsel for Defendant/Appellant*

---

## MEMORANDUM DECISION

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge John C. Gemmill and Judge Donn Kessler joined.

---

**J O N E S**, Judge:

**¶1**        Chicago Title Insurance Company (Chicago Title) appeals the trial court's grant of summary judgment to Madison Square Development Partnership of Arizona (Madison) on Madison's negligence, breach of contract, and breach of fiduciary duty claims. For the following reasons, we reverse the decision of the trial court, and remand for entry of judgment in favor of Chicago Title.

## FACTS[1] AND PROCEDURAL HISTORY

**¶2**        In August 2006, Madison sold commercial property to the predecessor of Corporate Center ATM, L.L.C. (CCATM),[2] which included the premises leased from CCATM by Centex. As part of the transaction between Madison and CCATM, Madison agreed that $225,000 of the sale proceeds would be placed into an escrow account with Chicago Title to be used for reimbursement of improvements the parties anticipated would be completed by Centex. Disbursement of those funds was controlled by an Escrow Agreement the parties entered into with Chicago Title in January 2007. Paragraph 2 of the Escrow Agreement provided:

> 2.        Disbursement from Accounts. Buyer shall be entitled to disbursements from the ASM Account and the Centex Account to reimburse Buyer for obligations incurred for tenant improvements pursuant to the ASM Lease and the

---

[1]        We view the facts and reasonable inferences therefrom in the light most favorable to Chicago Title, the party against whom summary judgment was entered. *DBT Yuma, L.L.C. v. Yuma Cnty. Airport Auth.*, 236 Ariz. 372, 373 n.3 (App. 2014) (quoting *Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, 315, ¶ 2 (App. 1998)).

[2]        For ease of reference, we refer to both Corporate Center ATM, L.L.C., and its predecessor in interest, Cambra Advisors, Inc., as CCATM.

Centex Lease, respectively. Buyer shall deliver copies of invoices, contracts or other evidence that Buyer has incurred such obligations to Seller and Escrow Holder, together with a request that Escrow Holder disburse to Buyer the amount of the obligation incurred by Buyer from the appropriate Account. Promptly thereafter Seller shall give Escrow Holder notice of Seller's consent to the requested disbursement. Seller shall not unreasonably withhold, condition or delay its consent. Seller's consent shall be deemed given if it has not either consented to or denied (with a reasonably detailed written statement of the reasons for such denial) Buyer's request for disbursement within ten business days after Seller's receipt of the request.

¶3 The Escrow Agreement also incorporated the notice provisions of the Purchase and Sale Agreement between Madison and CCATM, which required "[a]ll notices or other communications required or permitted hereunder . . . be in writing, and . . . personally delivered, sent by registered or certified mail, postage prepaid, return receipt requested, or sent by telecopy" to those persons designated by the agreement. As to Madison, notice was to be sent to its corporate office, with copies to its attorney and two principals, including its managing partner, Gerald W. Bosstick. The parties agreed the Escrow Agreement "constitute[d] the entire agreement and understanding among the parties . . . and supersede[d] all prior agreements and understandings with respect to [the Centex account]."

¶4 In October 2008, CCATM sent Chicago Title a request for disbursement of $213,842.04 from the escrow account. Unbeknownst to Chicago Title, CCATM did not send the request to Madison, as required by the Escrow Agreement. However, on its own initiative, on October 16, 2008, Chicago Title sent a "courtesy email" to Bosstick that had attached a copy of both the Escrow Agreement and CCATM's request, and stated: "Pursuant to the attached Escrow Agreement, please find a draw request in the amount of $213,842.04 for your review. Barring any objection from Madison . . . , this draw is scheduled to be dispersed on 10/31/08. Feel free to contact me should you have any questions."

¶5 In November 2008, CCATM sent a second request for disbursement of $807.05, and Chicago Title repeated its prior practice, sending a similar email to Bosstick. Bosstick received the emails; however, he did not respond until April 2009. Receiving no objection within the ten

day response period, Chicago Title disbursed the funds to CCATM on the scheduled dates as it was required to do by the Escrow Agreement.

**¶6** In May 2010, Madison filed suit against Chicago Title, alleging Chicago Title had wrongfully distributed the funds to CCATM in violation of the Escrow Agreement and its fiduciary duty to Madison.[3] On April 15, 2013, the parties filed cross-motions for summary judgment,[4] essentially disputing the scope of Chicago Title's obligations under the Escrow Agreement prior to disbursement of funds to CCATM. The trial court ruled in favor of Madison and entered a signed final judgment on December 18, 2013. This appeal timely followed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1)[5] and -2101(A)(1).

## DISCUSSION

**¶7** We review the grant of summary judgment *de novo*. *DBT Yuma*, 236 Ariz. at 374, ¶ 8 (citing *Tierra Ranchos Homeowners Ass'n v. Kitchukov*, 216 Ariz. 195, 199, ¶ 15 (App. 2007)). In the absence of any disputed issue of material fact, our review focuses on whether either party is entitled to judgment as a matter of law. *Tenet Healthsystem TGH, Inc. v. Silver*, 203 Ariz. 217, 226, ¶ 36 (App. 2002); Ariz. R. Civ. P. 56(a).

---

[3] Madison also brought claims against CCATM for breach of contract, conversion, and creation of a constructive trust. CCATM did not defend the action, and ultimately, summary judgment on those claims was entered in favor of Madison. Recognizing CCATM's inability to pay, Madison has not pursued judgment against CCATM, and these claims are not relevant to this appeal.

[4] The parties filed their first round of opposing motions for summary judgment in October and November 2011. The trial court initially denied both motions, but upon request for reconsideration, entered judgment in favor of Chicago Title. Thereafter, Madison discovered it had named the incorrect Chicago Title entity as a defendant. Upon being advised of the error, the trial court vacated the judgment in favor of Chicago Title and permitted Madison to amend its complaint accordingly. The April 2013 motions properly addressed the amended complaint.

[5] Absent material revisions from the relevant date, we cite a statute's current version.

¶8            Madison's claims are premised upon the undisputed fact that Chicago Title did not take any steps to confirm that CCATM sent its reimbursement request directly to Madison, its attorneys, and principals, before disbursing the funds from escrow.  Madison effectively argues Chicago Title had an affirmative duty, in the absence of any suspicion of wrongdoing, to investigate CCATM's request for reimbursement.  We disagree.

¶9            "An escrow agent has a fiduciary relationship of trust and confidence to the parties to the escrow."  *Maxfield v. Martin*, 217 Ariz. 312, 314, ¶ 12 (App. 2007) (citing *Maganas v. Northroup*, 135 Ariz. 573, 576 (1983)). That fiduciary relationship gives rise to two distinct duties: first, the duty of strict compliance, which requires the escrow agent "to act in strict accordance with the terms of the escrow agreement," and second, the duty "to disclose known fraud."  *Maganas*, 135 Ariz. at 576.  Madison does not present any facts or argument to suggest Chicago Title knew or should have known CCATM did not provide notice of its request to Madison; the question presented then, is whether Chicago Title's disbursement of the funds departed from the terms of the Escrow Agreement, or any general duty of care, so as to constitute a breach of Chicago Title's duties as the escrow holder.

¶10           Chicago Title defends its position based upon the final clause of the disbursement instructions, providing that Madison's consent would be deemed given if it did not object within ten business days of its "receipt of the request," asserting Madison "received the request" when it received the courtesy email.  In response, Madison contends the Escrow Agreement requires Madison receive *notice* of the request *from CCATM* prior to disbursement.  And, because CCATM never provided notice of its disbursement request to Madison, the ten-day period was never triggered. The fatal flaw in Madison's argument, however, is that CCATM's wrongdoing cannot, without more, be imputed to Chicago Title.

¶11           A contract's interpretation is controlled by the intent of the parties, as ascertained through its language.  *ELM Ret. Ctr., L.P. v. Callaway*, 226 Ariz. 287, 290-91, ¶ 15 (App. 2010) (citations omitted).  Words are given their normal, ordinary meaning, *Aztar Corp. v. U.S. Fire Ins. Co.*, 223 Ariz. 463, 469, ¶ 17 (App. 2010) (quoting *A Tumbling-T Ranches v. Flood Control Dist. of Maricopa Cnty.*, 220 Ariz. 202, 209, ¶ 23 (App. 2008)), and when the language is plain and unambiguous, will be enforced as written.  *Emp'rs Mut. Cas. Co. v. DGG & CAR, Inc.*, 218 Ariz. 262, 267, ¶ 24 (2008) (quoting *D.M.A.F.B. Fed. Credit Union v. Emp'rs Mut. Liab. Ins. Co.*, 96 Ariz. 399, 403 (1964)).  Here, the plain language of the Escrow Agreement presumes

Madison's consent to disbursement if it did not object "within ten business days after Seller's receipt of the request."

**¶12**    Madison does not dispute that it "received" the email copy of the request from Chicago Title in accordance with the ordinary meaning of the word "receive."[6]  *See State v. Jensen*, 217 Ariz. 345, 349, ¶ 7 (App. 2008) ("To 'receive' is commonly defined as 'to take delivery of (a thing) from another' and 'to accept (something offered or presented)' and 'to take in.'") (quoting II Compact Edition of the Oxford English Dictionary 232 (1971)). Madison nonetheless contends Chicago Title breached its duty of strict compliance because the ten-day period "did not begin to run until Madison Square received the contractually-required notice of a request for disbursement from CCATM."

**¶13**    However, disbursement of the funds was not conditioned upon "receipt of notice" or "receipt from CCATM."  The Escrow Agreement simply required, by its plain language, that Madison "receive the request." *See Andrews v. Blake*, 205 Ariz. 236, 241, ¶ 18 (2003) (declining to interpret option agreement, which stated it "shall terminate if not exercised in writing," to incorporate separate notice provision, where purchase provision did not specifically refer to notice provision or require exercise be accomplished in any particular manner).

**¶14**    Additionally, the disbursement instructions conclude by stating that if Madison does not affirmatively consent within ten business days of receipt, its consent will be deemed given.  Clearly, the parties anticipated Madison might simply elect not to respond and, therefore, pursuant to the specific provisions of the agreement, communication was not required between Madison and Chicago Title prior to disbursement.

**¶15**    While Madison purports to demand strict compliance with the terms of the Escrow Agreement, it does not identify anywhere within the instructions where Chicago Title was tasked with investigating CCATM's compliance with its obligations thereunder.   Madison further concedes Chicago Title was not obligated or even expected to advise Madison it had received a request for disbursement.  In the absence of any

---

[6]    Madison argues for the first time on appeal that the reimbursement request was not attached to the email it received from Chicago Title. Madison did not assert this position with the trial court, and we deem it waived. *See Airfreight Express Ltd. v. Evergreen Air Ctr., Inc.*, 215 Ariz. 103, 109, ¶ 17 (App. 2007) (citing *Englert v. Carondelet Health Network*, 199 Ariz. 21, 26, ¶ 13 (App. 2000)).

contractual agreement otherwise, we agree with our supreme court that there is no general duty imposed upon the escrow holder to search for irregularities or police the performance of the parties absent knowledge that a fraud is being committed on a party to the escrow. *See Berry v. McLeod*, 124 Ariz. 346, 352 (1979) ("Generally, there is no duty to disclose information received by an escrow agent unless such a duty is required by the terms of the agreement, but we hold that there is an exception to the foregoing rule when the escrow agent [k]nows that a fraud is being committed on a party to an escrow and the failure of the escrow agent to disclose the information of the fraud will assist in accomplishing the fraud; under such conditions the escrow agent has a duty to disclose the facts actually known."); *see also Maxfield*, 217 Ariz. at 313, 315, ¶¶ 4, 14 (holding escrow holder had a fiduciary duty to confirm identity of a party whom it had never met and who arrived to collect funds in an obvious disguise).

¶16　　Madison has not suggested that, had it desired any of these alternate terms, it was denied the opportunity to negotiate for them; to the contrary, Madison asserts the provisions regarding communication were "heavily negotiated and carefully-crafted" to reflect the parties' agreement. *See 1800 Ocotillo, L.L.C. v. WLB Group, Inc.*, 219 Ariz. 200, 202, ¶ 8 (2008) ("Our law generally presumes, especially in commercial contexts, that private parties are best able to determine if particular contractual terms serve their interests.") (citation omitted).　We are not at liberty to rewrite the contract to provide terms more favorable to either party than those they chose to include. *Coury Bros. Ranches, Inc. v. Ellsworth*, 103 Ariz. 515, 522 (1968) (citing *Goodman v. Newzona Inv. Co.*, 101 Ariz. 470, 472 (1966)); *see also Mission Ins. Co. v. Nethers*, 119 Ariz. 405, 408 (App. 1978) ("[I]t is not the prerogative of the courts to rewrite the contract in attempting to avoid harsh results.") (citing *Harbor Ins. Co. v. United Servs. Auto. Ass'n*, 114 Ariz. 58, 61 (App. 1976)).

¶17　　Madison relies heavily on *Burkons v. Ticor Title Insurance Co. of California*, 168 Ariz. 345, 352 (1991), in arguing that Chicago Title should have sought clarification from the parties in the face of any ambiguity amongst the various documents placed in escrow.　Having concluded the Escrow Agreement was clear and unambiguous as to the event triggering the ten-day period for consent — Madison's receipt of the request — and that Chicago Title should not have been surprised if Madison did not respond — an event specifically contemplated by the parties — we find *Burkons* inapplicable.　Moreover, even assuming some discrepancy between the various contracts, Chicago Title need not seek clarification where the parties explicitly agreed the Escrow Agreement controlled over any prior agreements.

¶18            Chicago Title confirmed Madison received the disbursement request by providing a copy to Madison.  While Madison may complain about the manner of transmittal, it does not dispute its receipt; nor does it dispute that Bosstick was the person with whom Chicago Title regularly corresponded regarding Madison's business, or that Chicago Title did so via email.  Chicago Title took reasonable steps to confirm Madison received the request, allowed Madison the contracted-for period to respond prior to disbursement, and acted in strict accordance with the Escrow Agreement in distributing the funds after it received no response within ten business days.  In the absence of any irregularities in the drafting or execution of the contract, we are bound to enforce the terms agreed upon by the parties.  *See Freedman v. Cont'l Serv. Corp.*, 127 Ariz. 540, 545 (App. 1980) ("[A] court will enforce a valid contract according to its terms, even though enforcement may be harsh . . . .") (citing *Goodman*, 101 Ariz. at 474).

¶19            Madison also suggests a separate breach by Chicago Title in its failure to confirm that the improvements for which CCATM requested reimbursement were "approved tenant improvements," as described within the lease between Madison and Centex.  Once again, the relevant documents do not impose any such obligation on Chicago Title, and Madison cites no authority for its assertion that an escrow agent has a duty to investigate the validity of a claim against funds in escrow.  *Contra Berry*, 124 Ariz. at 352 ("The escrow company is not a guardian for the uninitiated.").  Madison was charged with consenting or objecting to the request, and it alone was responsible for assessing and responding to the substance and legitimacy of the request.  As with the prior issue, we cannot, on appeal, craft previously non-existent provisions into the agreement in order to create a breach not evident from the agreement the parties bargained for and signed.  *Coury Bros.*, 103 Ariz. at 522.  We therefore reject any argument that Chicago Title had an obligation, whether through the language of the parties' agreement or as an independent duty, to police the contents of CCATM's request on Madison's behalf and/or independently assess whether the improvements were authorized.

¶20            In the absence of any breach, Madison's claims fail.  *See Berne v. Greyhound Parks of Ariz., Inc.*, 104 Ariz. 38, 39 (1968) (noting "universal rule" that plaintiff must establish breach of a duty to prevail on a claim of negligence); Rev. Ariz. Jury Instr. (RAJI) (Civil) 5th Contract 2 (instructing that breach is an essential element of claim for breach of contract); RAJI (Civil) 5th Commercial Torts 1A (same for breach of fiduciary duty of

escrow agent).  Chicago Title is therefore entitled to judgment as a matter of law.[7]

## CONCLUSION

**¶21**　　　　Based upon the foregoing, we reverse the summary judgment in favor of Madison, vacate the award of attorneys' fees and costs, and remand for entry of judgment in favor of Chicago Title and an evaluation of the parties' entitlement to fees, and the amount of any such fees, in light of the issues determined within this appeal.  *Burke v. Voicestream Wireless Corp. II*, 207 Ariz. 393, 400, ¶ 37 (App. 2004) ("When cross-motions for summary judgment have been filed, this court may evaluate the cross-motions and, if appropriate, remand with instructions that judgment be entered in favor of the appellants.").

**¶22**　　　　Both parties request their attorneys' fees and costs on appeal pursuant to A.R.S. § 12-341.01 and ARCAP 21.  As the prevailing party, Chicago Title is awarded its attorneys' fees and costs on appeal upon compliance with ARCAP 21.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama

---

[7]　　　Because of this conclusion, we do not reach the remaining issues asserted on appeal.