IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**DBT YUMA, L.L.C., AN ARIZONA LIMITED LIABILITY COMPANY; DBRT YUMA FBO, LLC, AN ARIZONA LIMITED LIABILITY COMPANY; DBRT YUMA HANGARS, LLC, AN ARIZONA LIMITED LIABILITY COMPANY; DBRT YUMA MAINTENANCE, LLC, AN ARIZONA LIMITED LIABILITY COMPANY,**
*Plaintiffs/Appellants,*

*v.*

**YUMA COUNTY AIRPORT AUTHORITY, A BODY POLITIC AND CORPORATE PURSUANT TO A.R.S. § 28-8424; YUMA COUNTY, A POLITICAL SUBDIVISION OF THE STATE OF ARIZONA,**
*Defendants/Appellees.*

---

No. CV-15-0019-PR
Filed November 24, 2015

---

Appeal from the Superior Court in Yuma County
The Honorable John N. Nelson, Judge
No. CV201001309
**AFFIRMED**

---

Opinion of the Court of Appeals, Division One
236 Ariz. 372, 340 P.3d 1080 (App. 2014)
**VACATED IN PART**

---

COUNSEL:

Daryl M. Williams (argued), Michael C. Blair, Baird, Williams & Greer, LLP, Phoenix, Attorneys for DBT Yuma, L.L.C., DBRT Yuma FBO, LLC, DBRT Yuma Hangars, LLC, and DBRT Yuma Maintenance, LLC

Paul S. Gerding, Jr., Marc R. Lieberman, Kelley E. Sucher, Kutak Rock, LLP, Scottsdale, Attorneys for Yuma County Airport Authority

Jon R. Smith, Yuma County Attorney, William J. Kerekes (argued), Chief Civil Deputy County Attorney, Office of the Yuma County Attorney, Yuma, Attorneys for Yuma County

Jeana R. Morrissey, Jeana R. Morrissey, PLLC, Gilbert, Attorney for Amici Curiae M-14P Inc., et al.

_____

VICE CHIEF JUSTICE PELANDER authored the opinion of the Court, in which CHIEF JUSTICE BALES and JUSTICES BRUTINEL, TIMMER, and BERCH (RETIRED) joined.

_____

VICE CHIEF JUSTICE PELANDER, opinion of the Court:

¶1        Under A.R.S. § 28-8424(A)(3), a nonprofit corporation that leases airport property from a county "[p]erforms an essential governmental function as an agency or instrumentality" of the county. We here address whether, based solely on that statutory language, the Yuma County Airport Authority ("YCAA") is an agent of Yuma County, making the County liable as principal for YCAA's alleged breach of its sublease with Plaintiffs (collectively "DBT Yuma"). We hold that § 28-8424(A)(3) by itself does not make YCAA the County's agent for purposes of imputed liability.

**I.**

¶2        In 1965, five persons formed YCAA as a nonprofit corporation to operate the Yuma International Airport under a lease from the County. That arrangement has continued for about fifty years. In 2008 and 2009, DBT Yuma subleased property at the airport from YCAA and operated a fixed base operation there as Lux Air. After YCAA evicted DBT Yuma and entered into a new sublease with another tenant, DBT Yuma sued YCAA for breaching its sublease and the implied covenant of good faith and fair dealing.

¶3        DBT Yuma later added Yuma County as a defendant, alleging that YCAA was the County's "political subdivision" and "instrumentality and alter ego," making the County liable for YCAA's breach.  The County and DBT Yuma each moved for summary judgment, and the trial court granted the County's motion under Arizona Rules of Civil Procedure 54(b) and 56.

¶4        The court of appeals affirmed, holding that YCAA was not the County's alter ego and that "A.R.S. § 28-8424 does not impose vicarious liability on counties for the activities of airport operators that are nonprofit corporate lessees of county airport land."  *DBT Yuma, L.L.C. v. Yuma Cty. Airport Auth.*, 236 Ariz. 372, 377 ¶ 20, 340 P.3d 1080, 1085 (App. 2014).

¶5        We granted review because the interpretation of § 28-8424 is a legal issue of first impression and statewide importance.  We have jurisdiction under article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

**II.**

¶6        Although DBT Yuma's liability theory against the County has morphed over time, DBT Yuma acknowledged before this Court that its claim against the County rests solely on § 28-8424.  We accordingly focus on the statutory scheme and do not address whether a principal-agent relationship could exist between a governmental entity and its authorized airport authority because of an alter-ego relationship or other common law doctrines.

**A.**

¶7        Yuma County's lease of airport property to YCAA was authorized by and executed pursuant to A.R.S. §§ 28-8411 and -8423.  Under A.R.S. § 28-8424(A)(1), a nonprofit corporation/lessee such as YCAA is a "body politic and corporate."  That subsection also identifies the corporation's public function — "exercising its powers for the benefit of the people, for the improvement of the people's health and welfare and for the increase of the people's traffic and prosperity."  A.R.S. § 28-8424(A)(1).

¶8        Courts in other states have determined that a "body politic and corporate" entity serving a public function is a public corporation.  *See*,

3

*e.g.*, *Rouse v. Theda Clark Med. Ctr., Inc.*, 735 N.W.2d 30, 37 (Wis. 2007); *Ferch v. Hous. Auth. of Cass Cty.*, 59 N.W.2d 849, 857 (N.D. 1953). "A public corporation is a separate entity from a county, city, or town, and is not a subdivision of the state." *Dobbs v. Shelby Cty. Econ. & Indus. Dev. Auth.*, 749 So. 2d 425, 430 (Ala. 1999) (citations and emphasis omitted). "Moreover, a public corporation is not the alter ego or agent of the county . . . in which it is organized." *Id.*

**B.**

**¶9** Despite the "body politic and corporate" language in § 28-8424(A)(1), DBT Yuma asserts that an airport authority is necessarily an agent of the authorizing governmental entity because the airport authority "[p]erforms an essential governmental function as an *agency or instrumentality* of the city, town, county or state." A.R.S. § 28-8424(A)(3) (emphasis added). The terms "agency" and "instrumentality" are not defined in A.R.S. §§ 1-215, 28-101, or elsewhere in Title 28. Absent statutory definitions, courts generally give words their ordinary meaning, *State v. Cox*, 217 Ariz. 353, 356 ¶ 20, 174 P.3d 265, 268 (2007), and may look to dictionary definitions, *State ex rel. Montgomery v. Harris (Shilgevorkyan)*, 234 Ariz. 343, 344 ¶ 9, 322 P.3d 160, 161 (2014); *see Prescott Newspapers, Inc. v. Yavapai Cty. Hosp. Ass'n*, 163 Ariz. 33, 39, 785 P.2d 1221, 1227 (App. 1989) (referring to a dictionary definition of "instrumentality" in concluding that a Hospital Association was not an "instrumentality" of a county Hospital District).

**¶10** In the public law context, however, the phrase "agency or instrumentality" is a term of art, for which dictionary definitions are not helpful in determining its meaning. We do not view statutory words in isolation, but rather draw their meaning from the context in which they are used. *See Adams v. Comm'n on Appellate Court Appointments*, 227 Ariz. 128, 135 ¶ 34, 254 P.3d 367, 374 (2011). Viewed in context, the phrase "agency or instrumentality" in § 28-8424(A)(3) is directly linked to, and merely descriptive of, an airport authority's public role in "[p]erform[ing] an essential governmental function." A.R.S. § 28-8424(A)(3). We conclude that those statutory terms were not meant to establish a principal-agent relationship for imputed liability purposes between a governmental entity and its authorized airport authority, particularly considering the latter's separate "body politic and corporate" status. A.R.S. § 28-8424(A)(1).

¶11    Our conclusion is buttressed by viewing both state and federal legislation more broadly.  Many statutes, like § 28-8424, authorize the creation of a nonprofit corporation that is expressly made an "agency or instrumentality" of the government.  *See, e.g.*, 12 U.S.C. § 1452 (creating the Federal Home Loan Mortgage Corporation as a "body corporate" and a federal agency); *see also* 28 U.S.C. § 1603(b) (defining an "agency or instrumentality of a foreign state"), 42 U.S.C. § 1437a(b)(6) (defining "public housing agency" as "any State, county, municipality, or other governmental entity or public body (or agency or instrumentality thereof)"); A.R.S. § 36-1401(2) (defining "public housing authority" as "an agency of a city, town or county created and controlled pursuant to this article"); *cf.* A.R.S. § 30-102(B) (creating the Arizona power authority as a "body corporate and politic").  Such statutes authorize the creation of a separate juridical entity with powers to sue and be sued, own or lease property, enter contracts, and conduct other specified activities.

¶12    In addition, the designation as an "agency or instrumentality" often has consequences for sovereign immunity, inter-governmental tax immunity, or foreign sovereign immunity.  *See, e.g.*, *First Nat'l City Bank v. Banco Para El Comercio Exterior*, 462 U.S. 611, 623–27 (1983) (discussing background for governmental instrumentalities and concluding that "government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such"); *O'Neil v. Valley Nat'l Bank of Phx.*, 58 Ariz. 539, 541, 121 P.2d 646, 646 (1942) (discussing that a state may not tax an instrumentality of the United States and that the United States cannot tax an instrumentality of the state); *Inco, Ltd. v. Lexington-Fayette Urban Cty. Airport Bd.*, 705 S.W.2d 933, 934 (Ky. Ct. App. 1985) (concluding that the board operating the airport was entitled to state immunity because it was an instrumentality of the county).

¶13    Consistent with these observations, other courts have held that statutes describing an entity as an "agency and instrumentality" of a governmental body do not, by themselves, make the government liable based on a statutory principal-agent relationship.  *See Ciulla v. State*, 77 N.Y.S.2d 545, 550 (N.Y. Ct. Cl. 1948) ("There is a distinct difference in legal connotation between words like 'agency' and 'instrumentality' on the one hand and the word 'agent' on the other."); *Pantess v. Saratoga Springs Auth.*, 8 N.Y.S.2d 103, 105 (App. Div. 1938) (noting that "when the State delegates the governmental power for the performance of a state function, the agency exercises its independent authority as delegated,"  there is "no authority for

making claim against the State"); *see also Lock v. City of Imperial*, 155 N.W.2d 924, 924 (Neb. 1968) (determining that the "parent municipal corporation" was not liable for the airport authority's torts because the airport authority "is a supplementary, separate, and independent public corporation"). We are unpersuaded that the "agency or instrumentality" language in § 28-8424(A)(3) by itself makes YCAA an agent of the County, rendering the latter liable for the former's alleged contractual breach.

¶14　　　Our view also finds support in the Restatement, which distinguishes common-law requirements for "agency" (which DBT Yuma acknowledges are not met here) from statutory terms such as those contained in § 28-8424(A)(3). *See* Restatement (Second) of Agency § 1 cmt. f (Am. Law Inst. 1958) ("Whether the word 'agent' as used in a statute corresponds to the meaning here given depends, with other factors, upon the purpose of the statute."); Restatement (Third) of Agency § 1.01 cmt. b (Am. Law Inst. 2006) ("More generally, legal usage varies. Some statutes and many cases use agency terminology when the underlying relationship falls outside the common-law definition.").

## C.

¶15　　　The Arizona cases on which DBT Yuma relies are inapposite. In *Hertz Drive-Ur-Self System, Inc. v. Tucson Airport Auth.*, 81 Ariz. 80, 299 P.2d 1071 (1956), this Court determined that the Tucson Airport Authority ("TAA") and its officers were not immune from a mandamus action, which generally seeks an order requiring public officers to perform their legal duties. *Hertz*, 81 Ariz. at 83-84, 299 P.2d at 1073. We observed that "the sole reason for [TAA's] existence is to advance the public interest in the operation, maintenance and improvement of the city-owned airport," and that TAA was "a public arm" and "instrumentality of the State," "performing public rather than private functions." *Id.* The Court did not discuss, much less decide, whether the City of Tucson (the airport owner/lessor, but not named as a defendant in the case) could be liable for TAA's actions.

¶16　　　DBT Yuma's reliance on two decisions by the court of appeals likewise is misplaced. *See Thompson v. Tucson Airport Auth., Inc.*, 163 Ariz. 173, 173–74, 786 P.2d 1024, 1024-25 (App. 1989) (holding that TAA was the city's agent and thus not subject to the Administrative Procedure Act, A.R.S. § 41–1001 et seq., which excludes local governments); *L.G. Lefler, Inc.*

*v. Tucson Airport Auth., Inc.*, 141 Ariz. 23, 25, 684 P.2d 904, 906 (App. 1984) (holding that TAA was city's agent under public works statute and thus was required to accept substituted security from a contractor constructing improvements at the airport). Notably, the public works statute's definition of "agent," at issue in *Lefler*, differs from the definition of agent for purposes of determining a principal-agent relationship. *Compare* A.R.S. § 34-101 ("In this title, unless the context otherwise requires:  1. 'Agent':  (a) Means any county, city or town, or officer, board or commission of any county, city or town . . . ."), *with* Restatement (Third) of Agency § 1.01 (Am. Law Inst. 2006) ("Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act.").

**¶17**        Like *Hertz*, those cases neither addressed § 28-8424 nor held that a nonprofit airport authority has a principal-agent relationship with its authorizing governmental entity.  They do not support DBT Yuma's broad contention that YCAA is the County's agent merely because it manages the airport.

### D.

**¶18**        Finally, DBT Yuma's reliance on A.R.S. § 28-8428 also is misplaced.  That statute exempts counties from liability for airport police officers' acts or omissions unless the county is the airport's governing body.  A.R.S. § 28-8428(B).  Because related statutes, including § 28-8424, contain no similar exemption or immunity language, DBT Yuma argues that the legislature must have intended counties to be liable for other acts or omissions of nonprofit airport authorities in managing the airport.

**¶19**        As noted above, however, a nonprofit/lessee airport authority operating an airport is a "body politic and corporate," § 28-8424(A)(1), and as such is generally not deemed an agent of the county. *See supra*, ¶ 8.  To instead conclude, based solely on § 28-8428, that an airport authority is an agent of the county for purposes of imputing the former's liability to the latter would flatly contradict § 28-8424(A)(1), rendering that subsection superfluous. *See Lemons v. Superior Court*, 141 Ariz. 502, 505, 687 P.2d 1257, 1260 (1984) ("Whenever possible a court should construe the meaning of several statutes so that effect can be given to all."); *State ex rel. Larson v. Farley*, 106 Ariz. 119, 122, 471 P.2d 731, 734

(1970) ("If reasonably practical, a statute should be explained in conjunction with other statutes to the end that they may be harmonious and consistent."). In sum, we cannot conclude from the specific exception in § 28-8428(B), regarding liability for airport police officers' acts or omissions, that the legislature generally intended to impute liability to the county for any other act or omission of the airport authority.

## III.

¶20 For the foregoing reasons, we affirm the trial court's summary judgment in favor of Yuma County. Although we agree with the result reached by the court of appeals, we vacate paragraphs 11 through 19 of its opinion.